(55 P.3d 928)

No. 87,251

STATE OF KANSAS, *Appellee,* v. GREGORY ALLAN LUNDQUIST, *Appellant.*

Opinion filed October 18, 2002.

*Korey A. Kaul,* assistant appellate defender, and *Steven R. Zinn,* deputy appellate defender, for appellant.

*James R. Spring,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GERNON, P.J., GREEN, J., and ROGG, S.J.

GREEN, J.: Gregory Lundquist appeals his convictions by a jury of possession of marijuana, possession of drug paraphernalia, and felony obstruction of official duty. On appeal, Lundquist contends that the trial court improperly instructed the jury on the elements of possession of marijuana. We disagree and affirm. In addition, Lundquist maintains that his convictions for possession of marijuana and possession of drug paraphernalia were multiplicitous. We disagree and affirm. Finally, Lundquist contends that the evidence was insufficient to support his conviction of felony obstruction of official duty. We agree and reverse.

Officers Sean Wallace and Brian Hedgecock were parked in their car on C Street in Arkansas City waiting to arrest a resident for outstanding warrants. The officers observed Lundquist enter the residence with a package under his arm. A few minutes later, he left without the package and drove away in a Ford Escort.

This aroused the officers' suspicions because Hedgecock had purchased cocaine at that residence as part of a drug task force investigation. The officers abandoned their stakeout of the residence to question Lundquist about an expired tag and a broken taillight on his car.

When Wallace pulled up behind Lundquist's car, Lundquist left his car and started walking towards a body shop. Wallace ordered Lundquist to stop. Lundquist ignored the order and kept walking towards the shop. Inside the shop's garage, Wallace again identified himself as a police officer and ordered Lundquist to stop. Lundquist ran away. The officers pursued Lundquist. At some point, Lundquist reached inside his pants pocket. Fearing Lundquist might have a weapon, Wallace drew his gun, yelling, "Hey, you. Do you want to get shot?" Lundquist dropped a cellophane wrapper on the ground.

Hedgecock handcuffed Lundquist, and Wallace retrieved the wrapper. Wallace saw that the wrapper contained residue similar to marijuana. Testing later confirmed the residue in the cellophane wrapper was marijuana.

Lundquist first argues that the trial court erred in the jury instruction on the elements of possession of marijuana. At trial, Lundquist failed to object to the instruction.

"No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. [Citation omitted.]" *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

### Jury Instruction No. 2 stated:

"The defendant is charged in Count I with the crime of unlawfully possessing marijuana. The defendant pleads not guilty. To establish this charge each of the following claims must be proved: (1) that the defendant possessed marijuana, (2) that the defendant did so intentionally, (3) that this act occurred on or about June 22, 2000, in Cowley County, Kansas.

"As used in these instructions, the proof of the possession of any amount of marijuana is sufficient even though such amount may not be measurable or usable.

"Possession means having control over the thing with the knowledge of and the intent to have such control."

Lundquist concedes that the trial court correctly instructed the jury on the elements of possession of marijuana, PIK Crim. 3d 67.16 (2001 Supp.), but argues that the addition of the words "proof of the possession of any amount of marijuana is sufficient even though such amount may not be measurable or useable" was unnecessary or superfluous.

" ' "The use of PIK instructions is not mandatory, but is *strongly recommended*. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed.' " [Citations omitted.]" *Hibbert v. Ransdell*, 29 Kan. App. 2d 328, 331-32, 26 P.3d 721 (2001).

Lundquist correctly notes in his brief that the instruction is still a correct statement of the law despite the addition of the extra language.

K.S.A. 2001 Supp. 65-4162(a)(3) states that

"[e]xcept as authorized by the uniform controlled substances act, it shall be unlawful for any person to possess or have under such person's control: . . . (3)

any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105 and amendments thereto or designated in subsection (g) of K.S.A. 65-4107 and amendments thereto or designated in subsection (g) of K.S.A. 65-4109 and amendments thereto."

The statute prohibiting the possession of marijuana does not have any requirement that a particular amount of drugs be found. In fact, our Supreme Court has stated: " '[T]he proof of the possession of *any* amount of a controlled substance is sufficient to sustain a conviction even though such amount may not be measurable or useable.' (Emphasis added.)" *State v. Brown*, 245 Kan. 604, 613-14, 783 P.2d 1278 (1989). As a result, we determine that the trial court correctly instructed the jury.

Lundquist next argues that his convictions for possession of marijuana and possession of drug paraphernalia are multiplicitous because the cellophane wrapper which contained the marijuana residue and was the basis for the drug paraphernalia charge was an inherent part of possession of marijuana.

"Whether convictions are multiplicitous is a question of law subject to unlimited review." *State v. Robbins*, 272 Kan. 158, 171, 32 P.3d 171, 182 (2001).

"Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998). Such multiple punishments are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *Brown v. Ohio*, 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977); *State v. Edwards*, 250 Kan. 320, 329, 826 P.2d 1355 (1991). . . .

"The concept of multiplicity in Kansas comes from two sources. The first is the traditional 'common-law' multiplicity concept. This exists where the State attempts to use a single wrongful act as the basis for multiple charges and is based on the merger of the charges. *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981). This concept has been a part of Kansas law since at least our decision in *State v. Colgate*, 31 Kan. 511, 515, 3 Pac. 346 (1884), wherein we stated: '[U]pon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense.' The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not multiplicitous. *Garnes*, 229 Kan. at 373. Offenses also do not merge

if they are committed separately and severally at different times and at different places. 229 Kan. at 373." *State v. Garcia*, 272 Kan. 140, 143-44, 32 P.3d 188, 190-91 (2001).

The second source of multiplicity is statutory. K.S.A. 21-3107(2)(d) defined an included offense as "a crime necessarily proved if the crime charged were proved" and stated that a defendant could not be convicted of both the crime charged and the included offense. This statute was amended in 1998, and subsection (2)(d) was eliminated. L. 1998, ch. 185, sec. 1. It was replaced with language which defined an included crime as "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." See K.S.A. 2001 Supp. 21-3107(2)(b). The present statutory language in essence mirrors the common-law elements test, thereby leaving it as the only remaining test for multiplicity. See also *State v. Saiz*, 269 Kan. 657, 662-63, 7 P.3d 1214 (2000) (for crimes committed after effective date of 1998 amendment of K.S.A. 21-3107, second prong of *State v. Fike*, 243 Kan. 365, 757 P.2d 724 [1988] disregarded).

The statute under which defendant was charged with possession of marijuana, K.S.A. 2001 Supp. 65-4162(a)(3), states that

"[e]xcept as authorized by the uniform controlled substances act, it shall be unlawful for any person to possess or have under such person's control: . . . (3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105 and amendments thereto or designated in subsection (g) of K.S.A. 65-4107 and amendments thereto or designated in subsection (g) of K.S.A. 65-4109 and amendments thereto."

K.S.A. 2001 Supp. 65-4105(d)(24) defines tetrahydrocannabinol as an active ingredient found in marijuana.

K.S.A. 2001 Supp. 65-4152 states in relevant part:

"(a) No person shall use or possess with intent to use:

. . . .

(3) any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act."

K.S.A. 65-4150 defines drug paraphernalia:

"(c) 'Drug paraphernalia' means all equipment, products and materials of any kind which are used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of the [16 Kan. App. 2d 283] uniform controlled substances act. 'Drug paraphernalia' shall include, but is not limited to:

. . . .

(9) Capsules, balloons, envelopes and other containers used or intended for use in packaging small quantities of controlled substances."

"The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not multiplicitous." *Garcia*, 272 Kan. at 143-44.

Under the above test, the charges are not multiplicitous. K.S.A. 65-4151 lists 14 factors to consider in determining whether an object is drug paraphernalia. Subsection (e) states that the court is to consider the "existence of any residue of controlled substances on the object" in making its determination, but the statute does not specifically state there must be drug residue on an object for that object to be considered drug paraphernalia. The State was not required to show that the paraphernalia contained marijuana residue in order to prove Lundquist guilty of possession of drug paraphernalia under K.S.A. 2001 Supp. 65-4152(a)(3). The presence of marijuana on the cellophane wrapper was merely another factor for the court to consider. See *State v. Hill*, 16 Kan. App. 2d 280, 284, 823 P.2d 201 (1991), *rev. denied* 250 Kan. 806 (1992).

K.S.A. 2001 Supp. 65-4162(a)(3) and K.S.A. 2001 Supp. 65-4152(a)(2) have at least one different element, and the two statutes are arguably aimed at two different substantive purposes. K.S.A. 2001 Supp. 65-4162(a)(3) proscribes contraband drugs while 65-4152 proscribes paraphernalia employed in using contraband drugs. Because marijuana can be possessed in a variety of different ways, the legislature clearly intended to punish a person for unlawful possession of paraphernalia separately from the offense of possession of marijuana. See *Hill*, 16 Kan. App. 2d at 284-85.

Next, Lundquist argues that there was insufficient evidence to convict him of felony obstruction of official duty.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, this court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

K.S.A. 21-3808 provides:

"(a) Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

"(b)(1) Obstructing legal process or official duty in the case of a felony, or resulting from parole or any authorized disposition for a felony, is a severity level 9, nonperson felony.

"(2) Obstructing legal process or official duty in a case of misdemeanor, or resulting from any authorized disposition for a misdemeanor, or a civil case is a class A nonperson misdemeanor."

In *State v. Hudson*, 261 Kan. 535, 931 P.2d 679 (1997), the defendant fled when a police officer attempted to pull him over for disregarding a stop sign; he was eventually taken into custody. When police learned he had outstanding felony warrants, they charged him with felony obstruction for fleeing from the police. The court held a misdemeanor or felony charge for obstruction of official duty under K.S.A. 21-3808 depends upon the officer's belief when he or she is carrying out an official duty. In other words, what the officer believes at the time of pursuing a suspect determines if obstruction of official duty will be charged as a misdemeanor or felony. The charge was reduced to a misdemeanor count of obstruction because the officer's knowledge and intent at the time he approached the defendant dictated the severity of the crime. 261 Kan. at 538-39.

Lundquist correctly relies on the holding in *Hudson* to support his argument that the evidence was insufficient to support his conviction of felony obstruction of official duty because the officers approached him for expired tags and a broken taillight, both of

which are misdemeanor offenses. As in *Hudson*, the only offenses committed in the arresting officers' presence were the misdemeanor violations. The State concedes the charge should have been misdemeanor obstruction of official duty.

Nevertheless, the State misplaces its reliance on *State v. Sullivan*, 17 Kan. App. 2d 771, 773-74, 844 P.2d 741 (1993), requesting that this court remand the case for resentencing as a misdemeanor while ignoring Lundquist's challenge to the sufficiency of the evidence.

In *Sullivan*, this court stated:

"The distinction in classifying the offense [as a felony or misdemeanor] only affects sentencing. The elements required to prove either a felony or a misdemeanor violation of obstructing official duty are the same. Therefore, *since sufficiency of the evidence was not raised*, the case is remanded for resentencing as a misdemeanor." (Emphasis added.) 17 Kan. App. 2d at 773-74.

In the present case, Lundquist does challenge the sufficiency of the evidence concerning his conviction for obstruction of official duty. Therefore, *Sullivan* is inapplicable to the facts of this case. Because the evidence was insufficient to support Lundquist's conviction of felony obstruction of official duty, we reverse his conviction for this crime.

Convictions affirmed for possession of marijuana and possession of drug paraphernalia, and conviction reversed for felony obstruction of official duty.