No. 98,160

STATE OF KANSAS, *Appellee*, v. WILLIAM WILLARD SHELDON, *Appellant*.

(231 P.3d 573)

Opinion filed May 21, 2010.

*Jennifer Anne Passiglia*, of Taylor, Krusor & Passiglia, L.L.P., of Winfield, argued the cause and was on the brief for appellant.

*James R. Spring*, deputy county attorney, argued the cause, and *Paul J. Morrison*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant William Willard Sheldon was charged with three counts of making a false information and two counts of felony obstruction of an official duty arising out of firearm pawns. The district court judge dismissed one obstruction count, and a jury convicted Sheldon on the remaining charges. He appealed. The Court of Appeals reversed the three false information convictions but affirmed the obstruction conviction. This court granted Sheldon's petition for review on the obstruction conviction. We denied the State's cross-petition for review of the three false information convictions.

FACTS AND PROCEDURAL BACKGROUND

On May 9, 2005, Wayman Young took a pistol, owned jointly with his wife, to Sheldon's Pawn Shop in Arkansas City, Kansas. Young asked Sheldon if he could pawn the gun despite a prior felony conviction on Young's record. By law, Sheldon was able to accept a gun from any person over 18 years of age but would only be able to return the gun to a person passing a law enforcement

check. Sheldon therefore told Young that he could pawn the gun but that Young would not be able to retrieve it. Young then asked if he could pawn the gun in the name of his wife, Linda, so that she could retrieve it. Sheldon agreed to this arrangement.

Young then called his wife at work for permission to list her name and to get her Social Security number. She agreed to list the pawn in her name and provided the information Young requested. While filling out the pawn form, Young inadvertently listed an incorrect date of birth for Linda, accidentally checked the box for "black" despite Linda being "white," and then signed her name.

Linda retrieved the gun on May 31 while Young was present.

Young took the pistol back to Sheldon's Pawn Shop on June 9, 2005. Young followed the May 9 procedure, pawning the gun in Linda's name with her permission. When filling out the pawn report, Young again called Linda for her Social Security number. He incorrectly listed a different date of birth for Linda, checked the box for "black" but then scratched it out and checked "white," and signed the form in his own name.

State statute and city ordinance require pawn store owners to provide certain information, including pawn tickets, to law enforcement. Officer Miles Cleveland of the Arkansas City Police Department regularly reviews pawn tickets and enters them into a database. On July 11, 2005, Cleveland encountered the June 9 pawn ticket filled out with Linda's information but signed by Young. He noticed the incorrect date of birth for Linda, the change from "black" to "white," and Young's signature rather than Linda's. Following his supervisor's order, Cleveland passed the ticket to Detective Eric Mata for investigation.

Mata found the pawn ticket taped to his door on July 11 and went to Sheldon's Pawn Shop to speak with Sheldon within a few days. At the point of this first conversation with Sheldon, Mata was investigating whether Young was in criminal possession of a firearm. Mata asked Sheldon who pawned the gun, and Sheldon said Linda had pawned the gun because Young could not be in possession of the gun. Mata asked Sheldon for the pawn contract, which is separate from the pawn ticket. The pawn contract had "Mrs. Wayman Young" written at the top. Mata asked why Young's name

was on the pawn ticket and pawn contract when Linda had pawned the gun, and Sheldon replied, "Well, that is just the way we keep track of it."

On July 15, Mata spoke with Young and Linda about the matter. Linda admitted retrieving the gun on May 31 in connection with the May 9 pawn, and Young admitted he had pawned the gun using his wife's information on both May 9 and June 9. The conversation ended with Young and Linda agreeing to fill out witness statements at the police station.

Later that afternoon, Mata returned to the pawn shop and spoke again with Sheldon. Mata was still investigating whether Young was in unlawful possession of a firearm. Wanting to find out why Sheldon's initial account conflicted with Young's story, Mata asked Sheldon "one last time" who pawned the gun. Mata characterized Sheldon's response as "sketchy" because it now included Young being present, leaving to bring Linda to the shop, and then Linda waiting outside. Sheldon said that he was unsure whether Young or Linda filled out the forms. When pressed, Sheldon terminated the conversation.

As his investigation continued, Mata learned that Young could legally possess the gun because the time period prohibiting his possession of a firearm had expired. Accordingly, no charges were filed against Young.

The two felony obstruction counts filed against Sheldon, Counts IV and V, were based on his two conversations with Mata. The underlying felony for Count IV was criminal possession of a firearm; the underlying felony for Count V was making a false information. Before the district judge submitted the case to the jury, he dismissed Count IV. The jury convicted Sheldon on the remaining counts.

The Court of Appeals reversed all but the conviction on Count V, which is the conviction Sheldon challenges before this court. He argues that there was no legal basis for the charge under K.S.A. 21-3808. Resolution of this issue requires statutory interpretation; thus our review is unlimited. *State v. Seabury*, 267 Kan. 431, 435, 985 P.2d 1162 (1999).

In reviewing a statute, "the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained." *Steffes v. City of Lawrence*, 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 (2007). "When statutory language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there." *State v. Breedlove*, 285 Kan. 1006, Syl. ¶ 5, 179 P.3d 1115 (2008). Words in common usage are to be given their natural and ordinary meaning. See *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 822, 104 P.3d 378 (2005).

K.S.A. 21-3808 provides in pertinent part:

"(a) Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law . . . in the discharge of any official duty.

"(b) (1) Obstructing legal process or official duty in the case of a felony . . . is a severity level 9, nonperson felony."

Sheldon argues that *Seabury*, 267 Kan. 431, controls.

In *Seabury*, the defendant was charged with obstructing execution of a search warrant arising out of an investigation of his son for cocaine trafficking. A majority interpreted the K.S.A. 21-3808 language "in the case of a felony" to mean that an underlying felony must have been committed or a felony charge must have been filed before a defendant can be charged with felony obstruction of official duty. *Seabury*, 267 Kan. at 437. Justice Fred N. Six, writing for a six-vote majority, stated: "A plain reading of the statute and a review of the case law supports our conclusion." *Seabury*, 267 Kan. at 437.

Sheldon argues that the mere investigation of a felony occurring at the time he had his second conversation with Mata was legally inadequate to meet the statutory standard. Further, the ultimate Count V obstruction charge against Sheldon rested on an underlying felony of making a false information, and the investigation of that crime had not begun at the time of Mata's second visit to the pawn shop.

The State responds that it is legally sufficient under *Seabury* that a felony case was eventually filed as a result of the investigation Mata conducted. In its view, it does not matter that, at the time of the statements made by Sheldon that are alleged to have constituted the obstruction, the only ongoing investigation that could have been obstructed was focused on a different crime and a different potential defendant or that the different crime turned out to be legally impossible. It was enough that the Mata investigation eventually ripened into an investigation of Sheldon's facilitation of or participation in a falsification of the required pawn documents.

The State relies upon *State v. Hudson*, 261 Kan. 535, 931 P.2d 679 (1997), in which the K.S.A. 21-3808 phrase "official duty" was under examination. In that case, we held that the "touchstone for the classification of the offense [as a felony or misdemeanor] is the reason for the officer's approaching the defendant who then flees or otherwise resists, and not the status of the defendant." *Hudson*, 261 Kan. at 538-39. *Hudson*, which predated *Seabury* by 2 years, reversed the felony conviction of a defendant who had fled from a traffic stop, ruling that he should have been charged with misdemeanor obstruction rather than felony obstruction based on warrants discovered after his apprehension because the law enforcement officer who made the stop did so for purposes of investigating a misdemeanor. *Hudson*, 261 Kan. at 538-39 (trial court properly reduced felony to misdemeanor based on subjective intention of investigating law enforcement officer); see *State v. Kelley*, 38 Kan. App. 2d 224, Syl. ¶ 1, 162 P.3d 832 (2007); *State v. Lundquist*, 30 Kan. App. 2d 1148, Syl. ¶ 5, 55 P.3d 928 (2002), *rev. denied* 275 Kan. 967 (2003) (new trial for misdemeanor, not felony); *State v. Hutcherson*, 25 Kan. App. 2d 501, 502-03, 968 P.2d 1109 (1998) (same).

The issue before us in this case is marginally more similar to that in *Seabury* than that in *Hudson*. We are not focused on classification of the Count V obstruction charge against Sheldon as a felony or misdemeanor but on whether, under any view of the uncontroverted evidence, the State could make its case. That being said, the dispositive emphasis that the *Hudson* opinion places on

the subjective intention of the official who is alleged to have been obstructed in carrying out his or her duty also informs our decision.

We agree with Sheldon that, as a matter of logic as well as law, the State could not meet its burden of proof on Count V. The uncontroverted testimony of Mata is that he was investigating only unlawful possession of a firearm by Young when he visited with Sheldon at the pawn shop on July 15. No investigation of making a false information committed by any potential defendant had begun; therefore, Sheldon, even if he lied to Mata, could not at that time be guilty under K.S.A. 21-3808 of "knowingly and intentionally obstructing, resisting or opposing" the detective "in the discharge of any official duty."

Because our decision on this argument by Sheldon is dispositive of the case, we do not reach his other appellate issues.

The decision of the Court of Appeals affirming Sheldon's felony obstruction conviction is reversed, as is the district court judgment of conviction. The remainder of Court of Appeals' opinion, which reversed the district court jury convictions of Sheldon on three counts of making a false information, was not subject to our grant of review and therefore stands.