NOT DESIGNATED FOR PUBLICATION

No. 123,381

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TAIMAK LEE COBB,
*Appellant*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Opinion filed January 28, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., ATCHESON, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Taimak Lee Cobb was convicted by a jury of felony interference with law enforcement for actions he took while being arrested by Leavenworth Police Department officers on April 23, 2019. Cobb has appealed, asserting the State provided insufficient evidence to convict him of interference with law enforcement and insufficient evidence to classify his interference charge as a felony rather than a misdemeanor. Cobb further asserts that the district court erred in determining his criminal history score. He seeks reversal of his interference conviction and discharge from further prosecution on the matter. After careful review, we find sufficient evidence existed to convict Cobb of

1

felony interference with law enforcement and the district court did not err in establishing his criminal history. Thus, we affirm.

FACTS

Officer Jasmin Crowder of the Leavenworth Police Department was on duty April 23, 2019, when the department received multiple calls reporting that a woman was pushed out of a moving vehicle. Crowder arrived at the scene and found Ashley Kearney, who was bleeding from her head and had multiple injuries. Kearney told the officer she had gone on a date with Cobb on Sunday, April 21 but that Cobb refused to take her home and held her against her will. Kearney said she tried to leave Cobb's house, but he "found her and told her to get in [his] car." Kearney said she refused, but Cobb "drug her into the car" and began threatening her life. Kearney said she knew Cobb owned a gun and she thought he would kill her, so she jumped out of the car.

After talking with Kearney, Officer Crowder and additional officers went to Cobb's residence in Leavenworth to try to contact him. Officers knocked on Cobb's front door and announced they were with the Leavenworth Police Department. Officer Benjamin Heath testified that officers made initial contact with Cobb through a window, but when Sergeant Ted Glass asked Cobb to go to the front door to speak with the officers about what happened that evening, Cobb refused and told Sergeant Glass to get a search warrant. Officer Crowder then returned to her patrol car to obtain a search warrant, and the remaining officers set up a perimeter around the house.

Officer Heath was stationed at the back of the house. When Cobb exited the back of the house, Heath drew his weapon, announced he was with the Leavenworth Police Department and instructed Cobb to get down. Cobb did not stop and ran to the front of the house. Officer Heath yelled to alert the other officers that Cobb was running to the front and followed Cobb around the side of the house into the front yard.

2

Sergeant Glass and Officer Sarah Moreno were at the front of the house and detained Cobb after he entered the front yard. Sergeant Glass and Officer Moreno both had their weapons drawn and Sergeant Glass instructed Cobb to get down. Cobb complied, getting onto the ground, but asked the officers what was happening. Sergeant Glass handcuffed Cobb; then he, Officer Moreno, and Officer Linda Whitelaw escorted Cobb to the front porch.

Sergeant Glass asked Cobb what happened with Kearney earlier that evening. Cobb said he did not know what happened and that Kearney was "drunk and jumped out the car." Sergeant Glass began to read Cobb his *Miranda* rights, but Cobb interrupted and told the officers to "take [him] in." Sergeant Glass then told Cobb he was under arrest and Cobb asked, "Under arrest for what?" Sergeant Glass and Officers Moreno and Whitelaw began to escort Cobb from the porch to a patrol car in front of the house.

While Cobb remained handcuffed outside the patrol car, Officer Moreno, Sergeant Glass, and Officer Whitelaw searched Cobb before placing him into the car. Officer Whitelaw searched Cobb's right hand, which was holding a set of keys, and instructed Cobb to give her the keys. He refused. A small struggle ensued, and Officer Moreno stepped in and put Cobb's wrist in a "wrist lock" to force him to drop the keys. Officer Moreno testified the keys were a concern because Cobb could use them to harm an officer or escape. Cobb said he could not drop the keys because of how Officer Moreno was twisting his hand. The keys eventually dropped to the ground. Officer Moreno testified she maintained the wrist lock after the keys dropped because Cobb was still "tensing . . . all of his muscles in his arm" and being combative toward her and Officer Whitelaw. Testimony indicated that Cobb tried to remove Officer Moreno's hand from his with his left hand. Cobb then asked why the officers were still "twisting [his] hand"; Officer Heath responded, saying it was because Cobb was not complying. Cobb continued to complain about his hand as the officers completed their search of his person.

The officers then asked Cobb to get in the patrol car and to stop resisting. Sergeant Glass testified that "muscling and force" had to be used to get Cobb into the patrol car.

Cobb was charged with felony criminal threat and misdemeanor domestic battery against Kearney and felony interference with law enforcement involving Officer Moreno. At the jury trial, Cobb was convicted of felony interference with law enforcement. However, the jury found him not guilty of domestic battery and could not reach a unanimous verdict as to his criminal threat charge. The district court sentenced Cobb to a prison term of 14 months and one year of postrelease supervision. Cobb timely appeals, arguing there was insufficient evidence for his interference conviction, his interference conviction was improperly classified as a felony, and his criminal history score was incorrect.

ANALYSIS

*Sufficiency of the evidence of interference with law enforcement*

On appeal, Cobb first argues that the State failed to prove three required elements of his interference with law enforcement charge—specifically, he alleges the State failed to show (1) that Officer Moreno was engaged in the official duty of arresting Cobb, (2) that Cobb knowingly obstructed Officer Moreno in discharging that duty, and (3) that Cobb substantially hindered or increased the burden of Officer Moreno in performing that duty. The State asserts that it provided sufficient evidence to prove each element under Kansas caselaw.

When a criminal defendant challenges the sufficiency of evidence, we review the entire record in a light most favorable to the State and ask whether we are convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, we cannot reweigh evidence, resolve evidentiary conflicts, or make witness

4

credibility determinations. *State v. Brown*, 305 Kan. 674, 689, 387 P.3d 835 (2017). Circumstantial evidence and proper logical inferences drawn from such evidence can be sufficient to support convictions for even the most serious crimes. *State v. Chandler*, 307 Kan. 657, 669, 414 P.3d 713 (2018).

Cobb was charged with interference with law enforcement under K.S.A. 2018 Supp. 21-5904(a)(3), which provides that interference with law enforcement is "knowingly obstructing, resisting, or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." The jury instruction on interference provided to the jury read:

> "To establish this charge, each of the following claims must be proved:
> "1. Sarah Moreno was discharging an official duty, namely placing a suspect under arrest.
> "2. The defendant knowingly obstructed, resisted, or opposed Sarah Moreno in discharging that official duty.
> "3. The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.
> "4. At the time the defendant knew or should have known that Sarah Moreno was a law enforcement officer.
> "5. This act occurred on or about the 23rd day of April, 2019, in Leavenworth County, Kansas."

Cobb argues that the State failed to sufficiently prove elements 1, 2, and 3. He contends that Officer Moreno was not the officer who placed him under arrest, and therefore he could not have knowingly obstructed her or increased her burden in performing this duty. Cobb further asserts that any action that may have obstructed Officer Moreno occurred after he was already under arrest, and thus the evidence cannot satisfy elements 2 and 3. In response, the State contends that Kansas law considers

Officer Moreno to be involved in executing the arrest, and that Cobb's actions of fleeing, refusing to drop his keys, and grabbing Officer Moreno all qualify as obstructing his arrest.

Cobb contends that Sergeant Glass was the one who arrested him when he handcuffed Cobb in the front yard, and that Officer Moreno was only involved after the arrest was complete. But, as the State accurately notes, all actions that occur while arresting a suspect can be viewed as one continuous incident. Simply because Officer Moreno was not the officer to either announce the arrest or handcuff Cobb does not mean she played no role in executing his arrest. She clearly assisted Sergeant Glass in initially detaining Cobb when Cobb ran from the back of his house to the front yard. She also assisted in the search incident to arrest of Cobb, when the struggle over his keys occurred, before securing Cobb in the patrol car. Viewing this as one continuous incident—beginning with Cobb fleeing from his home and ending with Cobb being placed in the patrol car—a rational fact-finder could logically conclude that Officer Moreno was engaging in her official duty of carrying out Cobb's arrest.

The facts also sufficiently show that Cobb "knowingly obstructed" and increased the burden on Officer Moreno as she tried to assist in the search of Cobb's person, which was incident to his arrest. There is no dispute that Cobb was aware Officer Moreno was a law enforcement officer and that she was acting in her official capacity. But when Officer Moreno engaged Cobb in a wrist lock to get Cobb to release his keys, he did not immediately comply; he instead tried to grab Officer Moreno's hand to stop the wrist lock.

Our Supreme Court has held that whether obstruction occurs depends on the particular facts of each case. While actual force is not required, there must be some overt act of obstruction or opposition. *Brown*, 305 Kan. at 690. They concluded that the

6

"principal purpose of criminalizing conduct that resists and obstructs officers in the performance of their duty is to protect officers from physical harm." 305 Kan. at 690.

In the past, Kansas courts have found that hiding from officers, fleeing from officers, and resisting being handcuffed were all acts sufficient to obstruct and increase the burden on officers executing their official duties. 305 Kan. at 691 (hiding from officers for a few minutes in a basement after the officers had identified themselves and ordered the defendant to come out was sufficient obstruction); *State v. Harris*, No. 116,129, 2017 WL 2899730, at *5 (Kan. App. 2017) (unpublished opinion) (fleeing from officers outside the defendant's home and resisting handcuffs was sufficient obstruction); *State v. Wearren*, No. 109,464, 2014 WL 2871317, at *7 (Kan. App. 2014) (unpublished opinion) (refusing to answer officers' questions and resisting handcuffs was sufficient obstruction).

In *Brown*, the defendant hid in the basement of a home and delayed officers' apprehension of him for 5 to 10 minutes. Our Supreme Court found the defendant's action of hiding was sufficient to establish a substantial hindrance or increased burden on the officers because the defendant's action created "an immediate safety issue" and required the officers to take "additional actions" to address the situation. 305 Kan. at 691.

Viewing the evidence in the light most favorable to the State, Cobb's brief struggle with Officer Moreno during his search incident to arrest is sufficient to establish that Cobb increased the burden on Officer Moreno in carrying out her official duty. Officer Moreno testified that her specific concern about the keys was that they were sharp objects that threatened officer safety. She further stated that because of Cobb's struggle over the keys, she was compelled to put him into a wrist lock to ensure the keys were out of his possession. This wrist lock continued after the keys were dropped because Cobb's muscles were still tensed, and he was orally combative toward Officers Moreno and Whitelaw. This evidence makes clear that Cobb's actions both created a safety issue and

7

required Officer Moreno to take additional action—namely, placing Cobb in a wrist lock until the keys were released and he was secured in the patrol car. Thus, sufficient evidence exists to show Cobb obstructed and increased the burden on Officer Moreno when carrying out her official duty.

*Classification of interference with law enforcement as a felony*

As we have noted, the State charged Cobb with felony interference with law enforcement under K.S.A. 2018 Supp. 21-5904(a)(3). Under this statute, interference with law enforcement as defined in subsection (a)(3) is a "[s]everity level 9, nonperson felony in the case of a felony, or resulting from parole or any authorized disposition for a felony" and is a class A nonperson misdemeanor "in the case of a misdemeanor, or resulting from any authorized disposition for a misdemeanor, or a civil case." K.S.A. 2018 Supp. 21-5904(b)(5)(A), (B). In his second issue on appeal, Cobb asserts he was improperly charged with felony interference, alleging that the only evidence the State had to classify the charge as a felony arose from what he characterizes as untrue statements Kearney made to law enforcement about Cobb pushing her out of the car. The State contends there was sufficient evidence for Cobb to be charged and convicted for felony interference with law enforcement.

As with Cobb's first sufficiency issue, we review the entire record in a light most favorable to the State and ask whether we are convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt of interference with law enforcement "in the case of a felony." In doing so, we do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Brown*, 305 Kan. at 689. Resolution of this issue also involves statutory interpretation of K.S.A. 2018 Supp. 21-5904, over which we have unlimited review. *State v. Sheldon*, 290 Kan. 523, 525, 231 P.3d 573 (2010).

8

As the State correctly notes, Kansas courts have held that whether an interference charge is classified as a felony or misdemeanor depends on whether the officer who is being interfered with believes they are carrying out an official duty related to a felony or to a misdemeanor. *State v. Hudson*, 261 Kan. 535, 538-39, 931 P.2d 679 (1997); *State v. Gray*, 51 Kan. App. 2d 1085, 1098, 360 P.3d 472 (2015) *rev'd on other grounds by State v. Gray*, 306 Kan. 1287, 403 P.3d 1220 (2017); *State v. Lundquist*, 30 Kan. App. 2d. 1148, 1154, 55 P.3d 928 (2002). When felony charges have been filed or a felony was committed, that is sufficient to charge a defendant with felony interference. *State v. Seabury*, 267 Kan. 431, 437, 985 P.2d 1162 (1999). Our court has found that the lack of a conviction for an underlying felony does not bar a charge of felony interference based on an arrest and subsequent charge for a felony. *State v. Birch*, No. 121,771, 2021 WL 300785, at *6 (Kan. App. 2021) (unpublished opinion), *rev. denied* 314 Kan. __ (September 30, 2021). The touchstone for the classification of an interference offense is the reason the officer approached the defendant, not the status of the defendant. *State v. Johnson*, 40 Kan. App. 2d 196, 202-203, 190 P.3d 995 (2008).

Cobb's argument on the issue asserts that the sole reason he was charged with felony interference with law enforcement was because of Kearney's initial statement that Cobb pushed her out of the car, leading the officers to incorrectly believe Cobb had committed aggravated battery. He contends that since he was not charged with aggravated battery but only misdemeanor domestic battery, his felony interference charge is improper. This argument is inaccurate.

As we have noted, the crux of a felony classification under K.S.A. 2018 Supp. 21-5904 is whether the officers *believed* they were carrying out their official duty in relation to a felony. Officer Crowder spoke with Kearney after the car incident and reported that Kearney said Cobb had held her against her will, physically "drug" her into his car and made threats to her life so severe Kearney "jumped out of the car." After obtaining this information, Officer Crowder and the additional officers immediately went to Cobb's

9

house to locate Cobb. Under these facts, a rational fact-finder could determine that the officers believed they were arriving at Cobb's house to carry out a felony investigation related to a potential aggravated battery, kidnapping, and criminal threat. While only aggravated battery was listed as the reason for arrest, each of these felony crimes are referenced in the information in the arrest report.

Cobb further argues that because he was not charged with aggravated battery and was acquitted of criminal threat, no underlying felony exists for Cobb to be properly convicted of felony interference with law enforcement. But as a panel of this court held in *Birch*, conviction on an underlying felony is not necessary; Cobb need only have been arrested on what officers believed were felony charges. These facts exist here: Cobb was arrested for aggravated battery and was charged with criminal threat—both felonies. The fact that Cobb was ultimately charged with domestic battery instead of aggravated battery or that he was acquitted of criminal threat does not change the officers' belief when they were engaging with Cobb that they were investigating a potential felony. Thus, sufficient evidence existed for a rational fact-finder to determine that Cobb was interfering with law enforcement "in the case of a felony" and his felony interference charge and conviction were not improper.

*Cobb's criminal history score*

Cobb's third amended presentence investigation report listed Cobb's criminal history score as B, based on two prior Florida convictions for person felonies. Cobb objected to this criminal history score, arguing that item number 11 on his criminal history worksheet, a prior Florida conviction for "Felony Battery – One Prior" should not have been classified as a person felony. The district court overruled Cobb's objection, finding the criminal history score was correct because the battery conviction was a felony in Florida and would be treated as a person crime in Kansas. In making this determination, the district court appears to have applied K.S.A. 2019 Supp. 21-6811(e).

10

On appeal, Cobb asserts that the district court improperly denied his objection to his criminal history score and erred in classifying Cobb's Florida battery conviction as a person felony. Cobb contends the district court applied the incorrect version of the criminal history scoring statute and that under the correct version, his Florida battery conviction could not have been scored as a person felony. The State concedes that the district court appears to have applied the incorrect version of K.S.A. 21-6811 but argues that even under the correct version, Cobb's Florida conviction would still be properly classified as a person felony.

The classification of prior crimes for criminal history scoring purposes involves interpretation of the revised Kansas Sentencing Guidelines Act, subject to unlimited appellate review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). K.S.A. 21-6811 is the statute that governs the determination of an offender's criminal history score and classification of out-of-state convictions in Kansas. The criminal statute that is in effect at the time of the criminal act controls. *State v. Rice*, 308 Kan. 1510, 1512, 430 P.3d 430 (2018). The criminal acts in this case occurred on April 23, 2019. The version of the criminal history classification statute the district court applied—K.S.A. 2019 Supp. 21-6811(e)—became effective on May 23, 2019, one month *after* Cobb's criminal acts in this case. The district court needed to apply K.S.A. 2018. Supp. 21-6811(e), the statute in effect on April 23, 2019, to properly determine Cobb's criminal history score.

Our first inquiry is to determine whether Cobb's Florida conviction in worksheet item 11 is a felony offense. We conclude that, even under the 2018 version of the statute, Cobb's Florida battery conviction would properly be classified as a felony. K.S.A. 2018 Supp. 21-6811(e)(2) provides that "[i]f a crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas." Cobb was convicted in Florida for felony battery, so the conviction was appropriately classified as a felony for Kansas criminal history purposes.

11

The next question to be resolved is whether the prior Florida conviction should be classified as a person or nonperson felony. K.S.A. 2018 Supp. 21-6811(e)(3) provides that

> "[i]n designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime."

Under *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018), an out-of-state crime is considered a "comparable offense" when the elements of the out-of-state crime are identical to or narrower than the elements of the Kansas crime being referenced. Included in the record on appeal is a copy of the Florida journal entry of conviction on worksheet item 11. The journal entry shows that Cobb was convicted in Florida for "Felony Battery (domestic)." In order to properly classify this offense as a person or nonperson crime for Kansas under K.S.A. 2018 Supp. 21-6811(e)(3), we must compare the Florida domestic battery statutes and the Kansas domestic battery statute in effect on April 23, 2019.

Two Florida statutes were cited on Cobb's journal entry of judgment for his Florida battery conviction: Fla. Stat. § 741.28 and Fla. Stat. § 784.03. The first statute defines domestic violence under Florida law as: "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense *resulting in physical injury or death of one family or household member by another family or household member*." (Emphasis added.) Fla. Stat. § 741.28(2). The second statute defines battery under Florida law as (1) actually and intentionally touching or striking another person against their will, or (2) intentionally causing bodily harm to another person. Fla. Stat. § 784.03(1)(a). Because Cobb was convicted of *domestic* felony battery in Florida, the first alternate

means listed under Fla. Stat. § 784.03(1)(a) is not included in the comparative analysis with Kansas law, because the language of the "domestic" distinction under Fla. Stat. § 741.28 requires physical injury or death.

K.S.A. 2018 Supp. 21-5414(a)(1) provides the definition of domestic battery in Kansas that was effective at the time of Cobb's criminal acts in this case: "Domestic battery is: . . . [k]nowingly or recklessly causing bodily harm to a person with whom the offender is involved or has been involved in a dating relationship or a family or household member." The mental state requirement for domestic felony battery under Florida law passes the *Wetrich* test, as it requires the narrower mental state of intentional action and Kansas law requires the broader mental state of knowing or reckless action. At first blush, the first alternative means under Florida's battery statute of "actually or intentionally touching or striking another person against their will" might be broader than the Kansas domestic battery statute—yet, as we have noted, that section of the Florida statute does not apply to this analysis because Cobb was convicted of *domestic* felony battery. Since under Florida law Cobb's domestic felony battery charge required physical injury or death under Fla. Stat. § 741.28, only the second half of Fla. Stat. § 784.03(1)(a) applies to this analysis.

Looking to the relevant Florida statutes, Cobb's domestic felony battery conviction clearly qualifies as a "comparable offense" under the *Wetrich* test. Cobb's Florida domestic felony battery conviction required he cause bodily physical injury or death to a family or household member; Kansas' domestic battery statute provides more broadly that the offender must cause bodily harm to a person with whom they are involved or dating, or to a family or household member. Therefore, Cobb's Florida domestic felony battery conviction is narrower than domestic battery in Kansas and thus is considered a "comparable offense" under *Wetrich* and K.S.A. 2018 Supp. 21-6811(e)(3). As a comparable offense, Cobb's Florida conviction takes on the person status of a Kansas domestic battery conviction. Thus, Cobb's challenged Florida conviction was properly

classified as a person felony and the district court did not err in calculating Cobb's criminal history score as B.

Affirmed.