(190 P.3d 995)
No. 96,111

STATE OF KANSAS, *Appellee,* v. JERRY D. JOHNSON, *Appellant.*

Opinion filed August 29, 2008.

*Lydia Krebs,* of Kansas Appellate Defender Office, for appellant.

*Elizabeth J. Dorsey*, legal intern, *Steven J. Obermeier*, assistant district attorney, *Phill Kline*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

CAPLINGER, J.: Jerry D. Johnson appeals his conviction of felony obstruction of official duty and his two convictions of identity theft, challenging the sufficiency of the evidence with respect to those convictions. Asserting constitutional grounds, Johnson also appeals the sentence imposed by the district court. We affirm Johnson's conviction of identity theft of John Dale; however we reverse his conviction of identity theft of Michael Robinson, finding the evidence insufficient for the jury to have found beyond a reasonable doubt that Johnson possessed Robinson's identification with the intent to defraud for economic benefit.

### Factual and procedural background

Jerry Johnson and Marshall Cooper attempted to make a purchase for $483 using a check in the name of John Lewis at the Home Depot Store in Merriam. When the store's check-scanning system flagged the check and indicated it contained a bad routing number, the store's head cashier, Marilyn Angle, requested a driver's license from Cooper, who had provided the check. Angle could see that the driver's license had been altered, and she contacted Assistant Store Manager Wesley McLaughlin. McLaughlin had previously assisted Johnson in another aisle. While assisting Johnson, McLaughlin noticed he was carrying a black backpack.

Cooper gave McLaughlin a driver's license which did not match the information on the check. In the course of his duties, McLaughlin had reviewed hundreds of drivers' licenses, and he believed this one had been altered and relaminated. The letters "DL" on the face of the license overlapped with the word "Kansas," which McLaughlin knew to be incorrect.

McLaughlin informed Cooper the check had a bad routing number and asked whether Cooper could provide another form of payment. McLaughlin also advised Cooper that he would hold the check to give to the police. At that point, Johnson instructed Cooper to retrieve his check from McLaughlin. Cooper snatched the check from McLaughlin and began walking toward the exit.

McLaughlin instructed the phone center to telephone the police and followed Cooper to the door. Johnson walked with McLaughlin and engaged him in small talk along the way, ostensibly for the purpose of delaying his advance towards Cooper.

Merriam police officer Shannon Goodnight responded to a call regarding a verbal disturbance between the manager and a customer at Home Depot. Upon arriving at the store, she was informed by McLaughlin that customers had attempted to purchase approximately $500 worth of merchandise with a bad check. At that point, Goodnight believed she was investigating a forgery or bad check offense with a value in excess of $500. Upon their arrival at Home Depot, the officers were directed by McLaughlin to Cooper and Johnson, who were located approximately 100 yards away in the parking lot in a tan pickup truck.

When Goodnight approached the truck, Cooper was sitting inside and Johnson was standing next to the truck. As Goodnight began talking to the men, Johnson, who was carrying a backpack, took off running. Goodnight ordered Johnson to stop, and at one point, Johnson said over his shoulder, "I didn't do anything, I didn't do anything." Goodnight caught up with Johnson while another officer, Sergeant Mike Daniels, stopped a patrol car in front of him.

Sergeant Daniels ordered Johnson to the ground, and when Johnson failed to comply, Daniels grabbed him by the arm. Johnson told him, "You got the wrong person, I didn't do anything." Johnson dropped an identification card bearing the name of Dennis Hanna. As Daniels bent down to pick it up, Johnson again took off running.

Goodnight pursued Johnson on foot while Daniels gave chase in the patrol car. At one point, Johnson turned and moved towards Goodnight and she sprayed him with pepper spray. Johnson swung the backpack at Goodnight's head but did not hit her. Goodnight sprayed Johnson again, and he took off running, disappearing over a fence into a residential area. Goodnight lost sight of Johnson and ended the chase pursuant to department policy, as she did not know whether he had a weapon. She radioed her location and

police set up a perimeter. Johnson eventually was apprehended by Corporal Todd Sparks.

Sparks searched Johnson and discovered an envelope containing four business checks bearing the name RGIS Inventory Specialist and a fraudulent Kansas identification card in the name of John Dale, the name on the check. Sparks also found an identification card on Johnson bearing the name Michael Robinson. Sparks believed the Dale identification was fraudulent because the photo had been tampered with and the card appeared to have been relaminated. The Robinson identification was expired and also appeared to have been relaminated. Johnson told Sparks his name was Michael Robinson, a claim he later repeated at the police station.

When Goodnight arrived at the Merriam police station, she learned Johnson had identified himself as Michael Robinson. However, Goodnight had spoken with Michael Robinson the previous day, and she told Johnson she knew he was not Robinson. When Officer Goodnight attempted to telephone Robinson, Johnson admitted Robinson was his brother.

The following day, Carl Kauffman, who lived near the Home Depot, found a black backpack under some shrubs in his backyard. He turned the bag over to police, and Sergeant Daniels identified the backpack as the one carried by Johnson. The backpack contained a pistol, loose ammunition rounds, and cocaine.

A few days later, Kauffman saw two men, one of whom he later identified as Johnson, walking in the yard next door, approximately 5 feet from where Kauffman had found the backpack. Johnson informed Kauffman he had lost his wedding ring in the area and the homeowner had given him permission to look around.

Kimberly Southard, a federal agent with the Inspector General's Office of the Social Security Administration, testified that the social security numbers and dates of birth on the identification cards of Michael Robinson and John Dale belonged to those individuals and not to Johnson.

Johnson testified at trial that he tried to avoid police because he had an outstanding warrant, and the backpack he carried, that he thought contained tools, belonged to Cooper, who had asked him

to carry it while the men were in the store. Johnson also testified he carried his brother's identification card because they looked alike and Johnson intended to assume Robinson's identity if he was approached by law enforcement.

In an amended complaint, Johnson was charged with making a false information, felony obstruction of official duty against Goodnight and/or Daniels while investigating "a forgery and/or making false information and/or passing a worthless check w/a value of $500 or more," assault of a law enforcement officer, criminal trespass, possession of cocaine, and one count of identity theft each with regard to John Dale and Michael Robinson.

At the close of the State's evidence, Johnson moved for acquittal on the felony obstruction charge on the basis that the amount of the check was less than $500. He also sought acquittal on the identity theft charges arguing there was no evidence that he intended to defraud someone for economic benefit. The district court denied the motions without elaboration.

Johnson was convicted of felony obstruction of official duty, assault of a law enforcement officer, criminal trespass, and two counts of identity theft. He was acquitted of making false information, and the jury could not reach a verdict on the possession of cocaine charge.

Johnson appeals his convictions and sentence.

*Denial of motion for acquittal of felony obstruction charge*

Johnson first argues the evidence is insufficient to support a conviction for felony obstruction of official duty because the State chose not to charge him with forgery and he was acquitted of making false information, the only possible felony underlying the obstruction charge. Absent the commission of an underlying felony, Johnson reasons, there can be no felony obstruction of official duty.

Johnson phrases the issue as one of statutory construction and suggests this court's standard of review as unlimited. However, at trial, Johnson's counsel moved for judgment of acquittal. In reviewing the denial of a motion for judgment of acquittal, we examine the sufficiency of the evidence to support the conviction. *State v. Cavaness*, 278 Kan. 469, 479, 101 P.3d 717 (2004). Spe-

cifically, we consider whether, after a review of all the evidence viewed in a light most favorable to the State, a rational factfinder could have found the defendant guilty beyond a reasonable doubt. 278 Kan. at 479.

Johnson was charged with obstructing Officer Goodnight and/ or Sergeant Daniels in the performance of their official duty in violation of K.S.A. 21-3808. That statute provides in relevant part:

"(a) Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process . . . in the discharge of any official duty.

"(b) (1) Obstructing legal process or official duty in the case of a felony, or resulting from parole or any authorized disposition for a felony, is a severity level 9, nonperson felony.

(2) Obstructing legal process or official duty in a case of misdemeanor, or resulting from any authorized disposition for a misdemeanor, or a civil case is a class A nonperson misdemeanor."

Whether Johnson could be charged with felony obstruction is controlled by *State v. Hudson*, 261 Kan. 535, 931 P.2d 679 (1997). There, the court held "[t]he touchstone for the classification of the [obstruction] offense is the reason for the officer's approaching the defendant who flees or otherwise resists, and not the status of the defendant." 261 Kan. at 538-39. Because the officer in *Hudson* attempted to stop the defendant for a traffic violation, but ended up chasing the defendant after he attempted to elude the officer, the court held the obstruction offense should have been charged as a misdemeanor rather than a felony. 261 Kan. at 539; see also *State v. Lundquist*, 30 Kan. App. 2d 1148, 1154-55, 55 P.3d 928 (2002), *rev. denied* 275 Kan. 967 (2003) (evidence was insufficient to convict defendant of felony obstruction when officers originally approached defendant regarding expired tag and broken taillight, and eventually arrested him on drug charges following a chase; officers' knowledge and intent at the time they approached the defendant concerned only misdemeanor offenses); *State v. Carter*, 30 Kan. App. 2d 1247, 1248, 1253-54, 57 P.3d 825 (2002), *rev. denied* 275 Kan. 966 (2003) (evidence was sufficient to support obstruction charge when officer originally responded to stabbing incident but defendant eventually acquitted of that charge; pur-

suant to *Hudson*, defendant's reason for eluding capture and his actual status were irrelevant; instead, only the officer's reason for attempting to capture the defendant was significant).

Despite *Hudson's* clear direction to consider the reason for the officers' investigation of the defendant in determining whether the felony obstruction charge is supported by the evidence, Johnson argues this case is controlled by *State v. Seabury*, 267 Kan. 431, 985 P.2d 1162 (1999). There, police obtained a warrant to search the defendant's home in connection with a drug trafficking investigation involving the defendant's son. The defendant was arrested after failing to comply with the officers' requests during the search.

The State appealed the district court's reduction of the obstruction count to a misdemeanor, arguing K.S.A. 21-3808 does not require an underlying felony. Further, the State contended the officers were investigating felony cocaine trafficking when they executed the warrant on Seabury's home.

The Supreme Court in *Seabury* reiterated *Hudson's* determination that the "classification of an obstruction charge . . . depends on the reason the officer approached the defendant, not the status of the defendant." 267 Kan. at 436-37. The court then stated the issue and its conclusion as follows:

"Our key question is whether the language in K.S.A. 21-3808(b)(1) 'in the case of a felony' means an underlying felony must have been committed before a defendant can be charged with felony obstruction of official duty. *We conclude an underlying felony is required (either felony charges have been filed or there has been a felony committed).* A plain reading of the statute and a review of the case law supports our conclusion." (Emphasis added.) 267 Kan. at 437.

Johnson points out that both officers who responded to the call at Home Depot testified they believed they were investigating a felony. Relying upon the above-italicized language, Johnson contends that before he could be charged with felony obstruction of official duty, he must have either committed a forgery, or forgery charges must have been filed against him.

We do not read *Seabury's* holding so broadly. Rather, in light of *Seabury's* reiteration of *Hudson's* broader holding, we believe *Seabury* must be restricted to its facts. Specifically, Seabury was charged with felony obstruction as a result of his actions during the

execution of a search warrant. And significantly, the warrant was issued based on an investigation of Seabury's son—not Seabury. At the time of the search, Seabury was not being investigated for any felony offense.

Moreover, Johnson's analysis ignores the court's ultimate conclusion in *Seabury*: "Here, no felony was committed, nor were felony charges filed based on the investigation." 267 Kan. at 438. In contrast, in this case, the responding officers testified they believed they were investigating a forgery, and related felony charges eventually were filed based on that investigation.

Accordingly, we conclude *Seabury* did not alter *Hudson*'s rule that the "touchstone" for the classification of an obstruction offense is the reason the officer approached the defendant, and not the status of the defendant. Here, both of the officers Johnson was charged with obstructing testified they believed they were investigating a forgery based upon the information available to them at the time. Further, Johnson was eventually charged with making a false information, a related felony.

Under these circumstances, the trial court did not err in denying Johnson's motion for acquittal on the charge of felony obstruction of official duty.

### Denial of motion for acquittal of identity theft of John Dale

Johnson next argues the evidence was insufficient to support the charge of identity theft, and the trial court erred in denying his motion for acquittal. As with the previous issue, we must determine whether the evidence was sufficient to allow a rational factfinder to find Johnson guilty beyond a reasonable doubt of identity theft. See *State v. Cavaness*, 278 Kan. at 479.

Johnson was convicted of identity theft in violation of K.S.A. 2003 Supp. 21-4018 based upon his possession of counterfeit checks made payable to John Dale and a manufactured identification card in the same name. That statute provides:

"Identity theft is knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor."

K.S.A. 21-3110(9) defines "intent to defraud" as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."

Johnson argues the legislature created identity theft as a criminal offense to protect individuals whose personal information is stolen and used to their detriment. Johnson reasons that even if he did intend to commit a fraud with Dale's information, "he intended to defraud the bank or establishment at which he cashed the manufactured checks; he certainly had no intent to defraud Mr. Dale." Because the legislature did not intend K.S.A. 2003 Supp. 21-4018 to protect third parties from harm, Johnson argues the evidence was insufficient to convict him of a violation of that statute.

Although not cited by defendant, this court's decision in *State v. Meza*, 38 Kan. App. 2d 245, 165 P.3d 298, *rev. denied* 285 Kan. 1176 (2007), controls this issue. There, the defendant purchased a social security card and Kansas identification card in the name of Nayssa Davila and used the documents to obtain employment at two different locations. Nayssa Davila was a lifetime resident of Texas whose name on her social security account was changed to Nyssa Nicole Carlson following adoption by her stepfather at age 7. Following the use of her identity, Carlson received threatening calls from debt collection agencies and notices of unpaid taxes assessed for income she had reportedly earned. Meza was convicted of identity theft based upon her use of Carlson's identity.

Meza argued the evidence was insufficient to prove she intended to defraud Carlson for economic benefit. Citing the definition of "intent to defraud" in K.S.A. 2004 Supp. 21-3110(9), the *Meza* court reasoned the statute would be satisfied "if Meza, for her own economic benefit, used Carlson's social security number knowingly and with the intent to defraud [the employer] by inducing it to create for her a right with respect to property." 38 Kan. App. 2d at 248. The court specifically concluded the crime of identity theft does not require proof of economic loss to the victim but only proof of the defendant's intent to defraud for his or her own economic benefit. 38 Kan. App. 2d at 248; see also *State v. Oswald*, 36 Kan. App. 2d 144, 145, 150, 137 P.3d 1066, *rev. denied* 282 Kan. 795

(2006) (defendant used friend's social security number and credit card information to open new cellular phone account and make vehicle payment without friend's permission; court found evidence sufficient to prove defendant acted with "intent to defraud for economic benefit" because defendant received economic benefit from opening account).

Here, in a search of Johnson's person, officers discovered four counterfeit checks made payable to John Dale and an identification in Dale's name. A federal Social Security Administration agent testified the social security number on the card belonged to John Dale, a real person. Further, Johnson admits that using Dale's identity to negotiate fabricated checks would constitute a fraud upon the financial institutions involved. We find ample evidence of Johnson's intent to defraud for his own economic benefit, and we affirm his conviction of identity theft with regard to Dale's personal information.

*Denial of Johnson's motion for acquittal regarding identity theft of Michael Robinson*

Johnson next claims the evidence was insufficient to prove his intent to defraud for economic benefit regarding his possession of the personal information of his brother, Michael Robinson. Johnson argues the only evidence of his intent came from his own testimony, in which he stated he intended to use his brother's identification to avoid arrest on outstanding warrants.

The State acknowledges it was required to prove Johnson possessed Robinson's personal information with the intent to defraud for economic benefit. The State suggests it established this element by presenting evidence that (1) Johnson possessed counterfeit checks; (2) individuals who attempt to use counterfeit checks often possess false identification documents; and (3) these individuals offer such documents when asked for identification. Further, the State points out that the jury was not bound to accept the defendant's version of facts in question and, upon a conviction, the jury is presumed to have believed the State's evidence and to have drawn from it all inferences favorable to the State. See *State v. Aikins*, 261 Kan. 346, 392, 932 P.2d 408 (1997). Thus, because the

jury convicted Johnson of identity theft, the State argues the jury necessarily disbelieved his explanation of his motive for carrying Robinson's ID card.

While it may be true that the jury disbelieved Johnson's explanation of his motive for carrying his brother's identification, the burden remains on the State to produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that Johnson possessed Robinson's personal information with the intent to defraud for economic benefit. The State failed to do so here. The counterfeit checks possessed by Johnson were payable to John Dale, not Michael Robinson, and Johnson possessed false identification in the name of John Dale. Thus, the connection between Johnson's possession of identification bearing the name Michael Robinson and any scheme by Johnson to use that identification to aid in passing counterfeit checks was tenuous, at best.

Because the evidence was insufficient for the jury to have found beyond a reasonable doubt that Johnson possessed his brother's identification card with the intent to defraud for economic benefit, we reverse Johnson's conviction of identity theft of Michael Robinson.

*Sentencing issues*

Although Johnson failed to object to his sentence below, he now raises constitutional concerns regarding the sentencing court's imposition of aggravated sentences within the presumptive ranges. Constitutional grounds for reversal raised for the first time on appeal are not properly before this panel for review. *State v. Alger*, 282 Kan. 297, 304, 145 P.3d 12 (2006). Additionally, because the sentence imposed was within the presumptive guidelines, we lack jurisdiction to review it. See K.S.A. 21-4721; *State v. Flores*, 268 Kan. 657, 659, 999 P.2d 919 (2000).

Finally, Johnson argues his constitutional rights were violated by the district court's imposition of an increased sentence based upon his prior criminal history, without requiring the State to prove the prior crimes to the jury beyond a reasonable doubt. Johnson acknowledges that *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), decided this issue adversely to his position; nevertheless, he raises

the issue to preserve it for appeal. Pursuant to *Ivory,* we affirm the sentence imposed.

Affirmed in part and reversed in part.