NOT DESIGNATED FOR PUBLICATION

No. 121,771

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALE WAYNE BIRCH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; DAVID J. KING, judge. Opinion filed January 29, 2021. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Sherri L. Becker*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Dale Wayne Birch appeals from his convictions for interference with law enforcement and battery of a law enforcement officer. He argues that the State failed to prove the felony interference charge because the evidence showed he was only fleeing from an arrest for a misdemeanor, and that the State failed to present sufficient evidence to support the alternative means of reckless battery against a law enforcement officer. After reviewing the record and the issues presented, we find no error and affirm Birch's convictions.

1

At around 7 a.m. on a winter morning, Katie Thomas called 911 to report that an unknown person was knocking on the back door of her house and trying to enter through the window. Officers from the Atchison Police Department responded to the call. As they approached the residence, a man, later identified as Birch, who was standing outside ran away. During the pursuit, Birch fell and one of the officers ordered him to stay on the ground, but Birch kicked the officer in the leg and then punched him in the ribs and ran away again. The officer caught up with Birch and deployed his taser, causing Birch to fall to the ground again and roll. Birch then stood back up and ran another 5 to 7 yards before falling into a muddy area. There, three officers were eventually able to physically restrain Birch in handcuffs and place him under arrest. During a search incident to his arrest, the officers discovered a blue pipe with marijuana residue inside.

Relevant to this appeal, the State originally charged Birch with three felonies: one count of attempted aggravated burglary; one count of interference with law enforcement; and one count of battery against a law enforcement officer. The complaint also charged Birch with three misdemeanors: criminal damage to property; possession of marijuana; and possession of drug paraphernalia.

The State later amended the complaint by dropping the attempted aggravated burglary charge and adding another misdemeanor charge for attempted criminal trespass. The State also amended the marijuana possession charge to possession of a controlled substance, specifically tetrahydrocannabinol, or THC.

At his arraignment in March 2019, the trial court granted Birch's motion to dismiss appointed counsel and allowed him to represent himself with the assistance of standby counsel.

The State's first witness at the two-day jury trial, Katie Thomas, testified that she knew Birch for about four years, and he was a welcome guest in her home at the time of the incident leading to his arrest. On the morning in question, Thomas said two female friends and her kids were spending the night at her house. At around 5 a.m., her friends texted her that somebody was knocking on the east door of the house, so she texted back to tell them not to open the door because she did not know who it was. The person began moving around the exterior of the house, knocking on the south door and the windows. The friends also texted Thomas that they heard what sounded like glass breaking, so she went to the kitchen to investigate. Thomas testified repeatedly that she did not know who was outside her house or what they wanted, and it made her upset. She said that usually when someone wants to come over, they will call or text her to make sure she was home. Thomas eventually went back into her bedroom with her children and called 911 to report the incident.

On the call, Thomas told the dispatcher that someone was knocking on her doors and windows and that she did not know who it was. She also told the dispatcher that she had locked the doors and windows, that she was inside her bedroom with her children, and her friends were in another room. After law enforcement arrived, Corporal Joshua Sinclair spoke with Thomas but did not tell her the identity of the suspect they had apprehended. Thomas testified that if she had known Birch was the person knocking on the doors and windows, she would have let him in because she and Birch were friends. He had been staying with her on and off for about a year and a half.

Sinclair testified that he was one of the first officers to arrive on the scene to handle a "prowler call." As he approached the house, he saw an unknown black male with dark clothing standing on the porch, later identified as Birch. He told Birch, "[H]ey, police officer, come here, talk to me, what's going on." Birch took a couple of steps toward Sinclair and then took off running around the house without saying anything. Sinclair radioed that the individual was running and gave a physical description. He

3

started to follow but lost sight of Birch and eventually heard Sergeant Kurtis Page and Birch yelling, so he cut through the houses to their location. Sinclair said Page was trying to control Birch on the ground, but Birch was "actively resisting." Helped by a third officer, they managed to place Birch in handcuffs. While checking Birch for injuries, Birch spun away and began running again, but the officers caught up to him and eventually placed him in a transport unit.

Sinclair also testified that Thomas told him she was awakened by someone banging on the door. She was too scared to physically check to see who it was, so she called 911, secured her kids, and waited for the officers to arrive. Thomas also told Sinclair that a person named Maize had been staying with her for a couple of days, but that around 1:30 a.m. the night before she had told him to find somewhere else to stay. After Maize left, she double-bolt locked the doors and went to bed with her kids. She later told Sinclair that the person she was referring to as Maize was the defendant, Dale Birch. Sinclair also testified the officers did not know Birch had not gained entry to the home until after speaking with Thomas.

Page testified that he responded to the 911 call as well, stating that he was investigating "a felony aggravated burglary." When pressed on this point on cross-examination, Page said his "thought process is, when someone is rattling the windows and trying to get in through a window, they're merely not just walking around, they're trying to get into the property." After parking in the alleyway and exiting his vehicle, he could see and hear Sinclair speaking with Birch. He heard Sinclair say that Birch started running, then saw Birch run into the alley. Page began chasing him while yelling "stop, police" multiple times. At one point, Birch slipped and fell "hard," losing a backpack and other things he was carrying in the process. The area where Birch fell was under construction, so it contained loose gravel and wet mud. Page ordered him to stay on the ground or he would Taser him, but Birch got back up and ran across the street. As he was running, Birch began taking his pants off and tripped and fell to the ground again. Page

4

finally caught up to Birch and ordered him to get on his belly. As Page was leaning in to try to turn him over, Birch kicked him in the lower left leg, knocking him back and causing an injury to Page. Birch started to get up again, but Page pushed him down and tried to grab his left wrist. Birch then punched Page in the left side of the ribs, so Page let go and backed off, allowing Birch to take off running again. At that point, Page deployed his Taser, causing Birch to fall down and roll. Page said that when Birch rolled, something either happened to the wires or one of the probes came unattached, so Birch managed to get up and run again. Birch ran another 5 to 7 yards and then fell down in the mud. Page got on Birch's back and held him down at that point, although he struggled to continue to hold Birch down or get him in handcuffs. Once the other two officers arrived, the three of them successfully placed Birch in handcuffs.

Officer Matthew Stout testified that he also responded to the 911 call. When he arrived, he encountered a woman who told him where Birch and the other officers had run. He parked in a driveway nearby and ran that direction, eventually finding Sinclair and Page trying to handcuff Birch on the ground. They were telling him to stop resisting, but Birch would not comply. Stout said he placed his handcuffs on Birch because Page's handcuffs were "impacted with mud." Stout then went to retrieve his vehicle so that Birch could be placed inside, and while doing so, Sinclair said over the radio that Birch had taken off running again. Because Birch was still actively resisting arrest, they decided not to put him Stout's patrol car and instead waited for a caged patrol vehicle.

During the jury instruction conference, Birch objected to "the limited amount of information for the possession charge." The trial court explained, "[t]hat's the language from the PIK Instruction," to which Birch responded, "Okay. That's fine." Birch also asked why the court included "the last Instruction" about his defense—"In circumstances where law enforcement officers use excessive force in making an arrest, the defendant is entitled to exercise his right of self-defense." The court explained that it included the instruction to honor his "absolute right to have the jury instructed on the basis of his

5

defense." Birch ultimately said he had no other objections or requests for other instructions.

After both parties rested, the trial court instructed the jury:

"To establish this charge, each of the following claims must be proved:

"1. Atchison Police Department Officers Kurtis Page and Joshua Sinclair were discharging their official duties by attempting to arrest Dale W. Birch for commission of a felony;

"2. The defendant, Dale W. Birch, knowingly obstructed, resisted, or opposed Kurtis Page and Joshua Sinclair by fleeing to avoid apprehension;

"3. The act of the defendant substantially hindered or increased the burden of the officers in the performance of the officers' official duty;

"4. At the time the defendant knew or should have known that Kurtis Page and Joshua Sinclair were law enforcement officers; and

"5. This act occurred on or about January 8, 2019, in Atchison County, Kansas."

The court also instructed the jury on this charge:

"The offense of interference with law enforcement in the case of a felony with which the defendant is charged includes the lesser offense of interference with law enforcement in the case of a misdemeanor.

"You may find the defendant guilty of interference with law enforcement in the case of a felony, interference with law enforcement in case of a misdemeanor, or not guilty.

"When there is a reasonable doubt as to which of two offenses defendant is guilty, he may be convicted of the lesser offense only, provided the lesser offense has been proven beyond a reasonable doubt.

"The classification of the obstruction as a felony or misdemeanor depends upon the knowledge and the intent of the officers as to whether a felony or a misdemeanor arrest was being made.

"An arrest for attempted aggravated burglary is a felony arrest.

"An arrest for attempted criminal trespass is a misdemeanor arrest.

6

"An arrest for battery against a law enforcement officer is a felony arrest."

In closing argument, the State argued in relation to the interference charge that the officers were investigating an attempted aggravated burglary when Birch "knowingly obstructed" the officers in performing that duty by running away. He continued to run and actively resisted arrest, at one point kicking Page. As for the battery charge, the State argued that Birch caused injuries to Page by fighting back when the officers tried to arrest him.

During deliberations, the jury submitted a question to the trial court asking, "What is the difference between burglery [*sic*] and aggravated burglery [*sic*], also differentially from attempted breaking and entering, trying to get clarification on the last paragraph of instruction no. 9." The State offered that the court could inform the jury that a burglary is a felony but objected to providing "the elements of the particular offenses" because "[o]bviously, it is based on the belief of the officer at the time that they are investigating." Even though the State chose not to charge Birch with aggravated burglary, the officers "subjective[ly]" believed they were "investigating an attempted aggravated burglary, which is a felony."

Birch pointed out that Sinclair testified he was there investigating a "prowler," to which the trial court responded "[b]ut prowling is not an offense." The court and the State then agreed that "breaking and entering" is not a crime but would "most likely be considered in common understanding as a burglary." The State confirmed that attempted burglary, burglary, and aggravated burglary were all felonies. After a recess, the court presented the parties with the following response:

> "The jury is instructed that all of the crimes upon which a decision is to be made on whether the Interference with Law Enforcement was in the case of a felony or a misdemeanor are described in Instruction No. 9.

7

"An Aggravated Burglary is a felony.

"A burglary is a felony.

"Kansas law does not have a crime defined as 'breaking and entering.'"

Birch at first objected, asking whether "there is an option for a misdemeanor in this matter or only options for felonies in this matter?" The trial court responded:

"Well, the option would be that if they find that the interference was while the officers were making an arrest on an aggravated burglary, it is a felony; if it is an attempted criminal trespass, it is a misdemeanor; if it is battery against a law enforcement officer, it is a felony; and if the State failed to prove that element, then they would have to fall down and give the lesser included offense or not guilty."

Birch then agreed to the response as written, and the court submitted it to the jury.

The jury ultimately found Birch guilty of the charged crimes. Based on a criminal history score of E, the trial court sentenced him to 27 months in prison with 12 months postrelease supervision on the felony charges and a total of 6 months in the county jail on the misdemeanor charges, to be served consecutively to the felony sentence.

Birch timely appealed.

ANALYSIS

*The State presented sufficient evidence to prove felony interference with a law enforcement officer.*

Birch argues his conviction for felony interference with law enforcement must be reversed because the State only presented evidence to show he fled from an arrest for misdemeanor attempted trespass. He essentially frames his challenge as three questions:

8

(1) whether the State presented sufficient evidence to prove flight from an arrest for a felony; (2) whether the trial court should have instructed on the elements of burglary; and (3) whether the trial court responded appropriately to the jury's question during deliberations?

In response, the State asserts that the officers were initially investigating an attempted aggravated burglary based on the 911 call and then shifted to investigating a felony battery against a law enforcement officer once Birch fled and resisted arrest. As for the instruction error claim, the State argues that Birch failed to object to the instructions below and invited any error by agreeing to the trial court's response to the jury's question. In the alternative, the State contends the court responded accurately to the jury's question about the classification of the offenses related to the interference charge.

Given the framing of Birch's arguments on this issue, there are several standards of appellate review involved. For that reason, we will discuss the three separate claims Birch is making, whether: (1) there is sufficient evidence to support a felony interference conviction; (2) the trial court committed a jury instruction error by omitting an instruction on the elements of attempted aggravated burglary; and (3) the trial court adequately responded to the jury's mid-deliberation question.

*There was sufficient evidence to support felony interference with law enforcement.*

Birch first argues that there was insufficient evidence to support the felony interference conviction, mainly because the evidence established only that he was fleeing from apprehension for a misdemeanor attempted criminal trespass. Thus, he contends he could be convicted only of a misdemeanor interference since there was no underlying felony. In response, the State asserts that the underlying offense was the felony battery against a law enforcement officer during Birch's attempt to escape, or that alternatively,

9

there was sufficient evidence to believe Birch had committed an attempted aggravated burglary.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

If resolving a sufficiency challenge involves interpretation of a statute, that presents a question of law subject to unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

The State charged Birch with interference with law enforcement under K.S.A. 2018 Supp. 21-5904(a)(3), which defines the offense as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." More specifically, the complaint alleged Birch committed the offense when he "ran from Sgt. Kurtis Page and Cpl. Joshua Sinclair of the Atchison Police Department during an arrest on a felony."

The statute also provides that a conviction for interference with law enforcement is a felony in the case of interference with a felony investigation or arrest, and a misdemeanor in the case of a misdemeanor investigation or arrest. K.S.A. 2018 Supp. 21-5904(b)(5). In *State v. Hudson*, 261 Kan. 535, 538, 931 P.2d 679 (1997), the Kansas Supreme Court held under a previous version of the statute that "official duty" is defined in terms of the arresting officer's subjective knowledge and intent upon first approaching the defendant. In *Hudson*, the defendant ran a stop sign and fled from the police, but unbeknownst to the officers at the time, the defendant had outstanding felony arrest

warrants. The State later charged the defendant with felony obstruction based on the warrants, which the trial court ultimately reduced to a misdemeanor charge. When the State appealed, the Kansas Supreme Court relied on the officer's subjective intent as he discharged his official duty—i.e., at the time of the traffic violation—in affirming the trial court's ruling. 261 Kan. at 538-39.

Just two years later, the Kansas Supreme Court discussed the holding from *Hudson* in *State v. Seabury*, 267 Kan. 431, 436-37, 985 P.2d 1162 (1999). In *Seabury*, the defendant interfered with officers during the execution of a search warrant at his home related to the defendant's son, who was the target of a felony drug trafficking investigation. Although the officers discovered drug paraphernalia and a small amount of marijuana (both misdemeanors), the State did not charge any felony associated with these items. The State appealed from the trial court's reduction of the felony obstruction charge to a misdemeanor, arguing that the statute did not require an underlying felony be charged because the officers were investigating felony drug trafficking.

Our Supreme Court affirmed the trial court's ruling, determining that even though the officers subjectively believed they were investigating a felony, reducing the obstruction charge to a misdemeanor was proper because *there was no underlying felony committed* or charged. 267 Kan. at 439. After reiterating the holding from *Hudson* that the "[c]lassification of an obstruction charge . . . depends on the reason the officer approached the defendant," the *Seabury* court held that "'in the case of a felony'" means "an underlying felony is required (either felony charges have been filed or there has been a felony committed)." 267 Kan. at 437.

Birch argues in his brief that this case is like *Seabury* because the officers did not discover any evidence of a felony burglary nor did the State charge him with any type of burglary offense. Similarly, he points out that he was charged with and convicted of misdemeanor attempted criminal trespass. His argument is unpersuasive for two reasons.

11

First, it bears mentioning that the State had in fact originally charged Birch with attempted aggravated burglary but later replaced that charge in an amended complaint with attempted criminal trespass. So Birch's assertion that the State did not charge him with attempted aggravated burglary is not entirely accurate. But more importantly, his reliance on the fact that the State charged him, and the jury ultimately convicted him of a misdemeanor offense is misplaced. Simply put, both *Hudson* and *Seabury* direct that the proper inquiry centers on the moment the officers first approached Birch and depends on the information available to them *at the time*. In that way, the facts here are distinguishable from *Seabury* because the officers were investigating what they believed to be some form of burglary and then Birch fled the scene.

Although neither party cites it, this case is much like *State v. Johnson*, 40 Kan. App. 2d 196, 190 P.3d 995 (2008). In that case, the officers testified they were investigating a felony forgery charge based on information that the defendant had tried to pass a bad check at a Home Depot. The defendant took off running when approached by the officers in the parking lot. Although the State never charged the defendant with forgery and the jury acquitted him of the only other possible underlying felony, the district court ultimately denied a motion for acquittal of the felony obstruction charge because a felony was still charged.

On appeal, the panel affirmed that ruling, finding that *Seabury* did not alter the "broader holding" from *Hudson* that "the 'touchstone' for the classification of an obstruction offense is *the reason the officer approached the defendant*, and not the status of the defendant." (Emphasis added.) 40 Kan. App. 2d at 202-03. And because the officers believed they were investigating a felony "based upon the information available to them at the time," the panel concluded the trial court did not err in denying the motion for acquittal. 40 Kan. App. 2d at 203. In other words, the lack of a *conviction* for an underlying felony did not preclude a charge for felony obstruction based on an *arrest and subsequent charge* for a felony.

12

Here, the officers who responded to the 911 call testified similarly about the nature of the initial investigation. Sinclair said, "[i]t was a prowler call," meaning that "[s]omeone [was] attempting to get into a residence." Page summarized the call as "for someone trying to get into the reporting party's house through a window," and specifically said, "[a]t that point [he] would have been [investigating] a felony aggravated burglary." Officer Stout testified that they "received a call for a subject attempting to break into a house."

A reasonable person viewing this evidence favorably to the State could conclude that the officers believed they were investigating some sort of burglary at the start of the encounter. "Dictionary definitions are good sources for the 'ordinary, contemporary, common' meanings of words." *Midwest Crane & Rigging v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). The Merriam-Webster Dictionary online defines "prowler" as "a person who moves through an area or place in a quiet and stealthy way in order to commit a crime." https://www.merriam-webster.com/dictionary/prowler (last visited January 12, 2021). The Oxford Dictionary online, United States version, defines "prowler" as "[a] person who moves stealthily around or loiters near a place with a view to committing a crime, especially burglary." https://www.lexico.com/en/definition/prowler (last visited January 12, 2021). And Webster's New World College Dictionary 1172 (5th ed. 2014) defines to prowl as "to roam about furtively, as in search of prey or loot."

Further, "burglary" is generally defined as the "act of breaking into a building to commit theft or some other crime." Webster's New World College Dictionary 199 (5th ed. 2014). Burglary and attempted burglary—either simple or aggravated—are classified as felony offenses. K.S.A. 2018 Supp. 21-5807(c) (classifying each of the various levels of burglary as felonies). And since Birch never disputes that he fled immediately, a reasonable person could find him guilty of "knowingly obstructing, resisting or opposing" the officers from investigating further by trying to evade capture for a felony arrest for

13

what the officers believed was some type of burglary. See K.S.A. 2018 Supp. 21-5904(a)(3).

Second, even if the State could not sustain a conviction for felony interference based on the original reason for the 911 call, that was not the only possible underlying felony in this case. The officers also arrested Birch and the State then charged him for a felony battery of a law enforcement officer, specifically based on Page's testimony that Birch kicked him the first time Birch fell after he ran from the house. The trial court instructed the jury that an arrest for either an attempted aggravated burglary or the battery of a law enforcement official could supply the necessary element for a felony arrest.

On this point, Birch asserts that no evidence supported a conviction for interference with law enforcement based on an arrest for battery of a law enforcement officer because no officer testified that they were trying to arrest him for the battery. He points out that Sinclair did not see him kick or punch Page, thus he "could not be trying to arrest Mr. Birch for a battery that he was not aware of." He then asserts that "[t]he flight from the house to the arrest was one continuous course of conduct that began outside the house," and that he was fleeing to avoid apprehension only for the attempted trespass.

It would strain credulity to accept Birch's view of the facts in this case. While it may be true that Sinclair did not know about the battery, Page knew what had happened and continued pursuing Birch until Page, Sinclair, and Stout were finally able to apprehend and take Birch into custody. Page was the primary officer who eventually apprehended Birch, since Page was holding him down when Sinclair caught up to them. Even after placing Birch in handcuffs, he continued trying to run away. Based on these facts, a reasonable person viewing the evidence in a light favorable to the State could also conclude that Birch was guilty of felony interference by trying to evade capture for the battery of Page.

14

*The court did not commit clear error by omitting an instruction for attempted aggravated burglary.*

Birch also argues briefly that the trial court erred by not instructing the jury on the elements of burglary, and thus the jury was "left to rely on the officers' incorrect testimony that a prowler trying to 'get into' a house was a felony or was aggravated burglary." Yet the State points out, Birch's only objections at the instruction conference were unrelated to the charge that is the subject of this appeal.

Kansas appellate courts analyze jury instruction issues using a three-step process. First, this court must determine whether it "'can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal.'" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). Second, this court will consider the merits of the claim "'to determine whether error occurred below.'" 307 Kan. at 317. Third, this court will then assess "'whether the error requires reversal, i.e., whether the error can be deemed harmless.'" 307 Kan. at 317.

At the second step, as Birch notes, this court assesses error by determining whether the instruction was legally and factually appropriate. 307 Kan. at 318. Whether an instruction was legally appropriate is a question of law subject to unlimited review. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). Whether an instruction was factually appropriate is reviewed for sufficient evidence, by viewing the evidence in the light most favorable to the requesting party to determine whether there was sufficient evidence to support the instruction. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

This court's review at the third step depends on whether the requesting party preserved the jury instruction challenge for appeal. *McLinn*, 307 Kan. at 317. Birch concedes that he did not object below, so this court applies the clear error standard and

15

will only reverse if an error occurred and the court is firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error has the burden to show the necessary prejudice. 307 Kan. at 318.

Thus, Birch's failure to object below means that he must show the omitted instruction led to an error—i.e., the omitted instruction was both legally and factually appropriate—and convince this court that the jury would have returned a different verdict. See *McLinn*, 307 Kan. at 318. We find that Birch cannot meet this burden.

First, an instruction on the elements of burglary would not have been factually appropriate because there was not sufficient evidence presented at trial to support the instruction. See *Williams*, 303 Kan. at 598-99. As mentioned, the State chose to replace the attempted aggravated burglary charge with attempted criminal trespass before trial and thus had no responsibility to present any evidence to establish Birch attempted to commit burglary. In short, the evidence presented at trial showed only that the officers *believed* they were investigating a burglary or attempted burglary. But after apprehending Birch and speaking with Thomas, there was no evidence suggesting Birch had committed a burglary or attempted burglary.

Second, an instruction on the elements of burglary would not have been legally appropriate because the State did not need to prove he was guilty beyond a reasonable doubt of some form of burglary to sustain a conviction for interference with law enforcement. A legally appropriate jury instruction must "'fairly and accurately state the applicable law.'" *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016).

Instruction No. 8 covered the interference charge and mirrored the current recommended pattern instructions, providing that the State must prove that officers Page and Sinclair "were discharging their official duties by attempting to arrest Dale W. Birch for commission of a felony" and that Birch "knowingly obstructed, resisted or opposed

16

[the officers] by fleeing to avoid apprehension." See PIK Crim. 4th 59.040 (2019 Supp.). In *State v. Scott*, 28 Kan. App. 2d 418, Syl. ¶ 5, 17 P.3d 966 (2001), a panel of this court approved an instruction patterned after what was then PIK Crim. 3d 60.09, despite the absence of an instruction for the underlying felony:

> "Use of PIK Crim. 3d 60.09 is favored when the State charges obstruction of an officer in the discharge of his or her duty. An instruction on the elements of the underlying felony is unwarranted when all of the instructions coupled with the evidence at trial clearly specify the crime charged."

Likewise, PIK Crim. 4th 59.040 does not mention the elements of the underlying felony as a necessary inclusion. In other words, the jury instructions given by the trial court did not materially differ from the recommended PIK instructions. See *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015) (finding that the Kansas Supreme Court "strongly recommend[s] the use of PIK instructions [for] accuracy, clarity, and uniformity [of jury] instructions"). So Birch has not established the requested instruction would have been legally appropriate.

Finally, even if an instruction on the elements of attempted aggravated burglary was legally and factually appropriate to avoid jury confusion, Birch cannot show that the result would have been any different. Birch was convicted of an underlying felony from which the State argues he was fleeing. The definition of felony battery against a law enforcement officer was provided to the jury, and Birch was convicted of that charge. Moreover, Birch never argued that he did not flee from the house and again from Page after allegedly kicking and wrestling with Page. His defense was that he was justified in fleeing due to injuries inflicted upon him by police. He did not present any evidence to support this theory at trial, except to show pictures of an ear injury that required 50 stitches, a CT scan that was normal, and Sinclair's testimony that he heard Birch "yelling curse words, get the fuck off me, you're hurting me, you're killing me." The judge pointed

17

out at the hearing on Birch's motion for a new trial that Birch could not be compelled to testify in his own defense. But if he was asserting an affirmative defense that he was justified in fleeing due to the use of excessive force by police, he must put on sufficient evidence of that fact. He presented no such evidence at trial.

For these reasons, we find that Birch has failed to show that the trial court erred by omitting any instruction on the elements of burglary.

*The trial court responded appropriately to the mid-deliberation jury question.*

Birch's claim that the trial court should have instructed the jury on the elements of burglary is somewhat related to his challenge to the trial court's response to a question about Instruction No. 9. In that instruction, the trial court explained that:

"The classification of the obstruction as a felony or misdemeanor depends upon the knowledge and the intent of the officers as to whether a felony or a misdemeanor arrest was being made.
"An arrest for attempted aggravated burglary is a felony arrest.
"An arrest for attempted criminal trespass is a misdemeanor arrest.
"An arrest for battery against a law enforcement officer is a felony arrest."

During deliberations, the jury sought clarification "on the last paragraph" of Instruction No. 9, specifically asking, "What is the difference between burglery [*sic*] and aggravated burglery [*sic*], also differentially from attempted breaking and entering[?]" After consulting with the parties, the court drafted a response directing that "all of the crimes upon which a decision is to be made on whether the Interference with Law Enforcement was in the case of a felony or a misdemeanor are described in Instruction No. 9," and clarifying that burglary and aggravated burglary were both felonies. At the time, Birch briefly objected but ultimately agreed after the court explained that the jury

18

still had the option to find him guilty of misdemeanor interference or not guilty of any interference.

Now on appeal, Birch argues that the trial court's response was inadequate and did not go far enough to clarify the crime of burglary for the jury. He asserts that the jury was left to rely on "legally inaccurate testimony from the officers that entry alone constituted a burglary," thus denying him a fair trial. The State responds that Birch invited any error by ultimately agreeing to the court's response. In the alternative, the State contends that the court accurately advised the jury by explaining that burglary and aggravated burglary were felony offenses and that there is no such crime titled "'breaking and entering'" in Kansas. The State is correct on both points.

To start, whether the doctrine of invited error applies is a question of law subject to unlimited review. *State v. Parks*, 308 Kan. 39, 42, 417 P.3d 1070 (2018). The Kansas Supreme Court in *State v. Bruce*, 255 Kan. 388, 397-98, 874 P.2d 1165 (1994), applied the invited error doctrine to a defendant's objection for the first time on appeal to the trial court's response to a jury question. In *Bruce*, the jury had asked for written copies of the court testimony, but defense counsel and the State agreed to the court's response that "'[i]t is not possible to have written transcripts prepared for your review at this time. Please rely on your collective memory.'" 255 Kan. at 396.

Similarly, Birch's only concern below was whether the response would still allow the jury to find him guilty of misdemeanor interference. In other words, he never argued below that the jury was confused about the elements of burglary, so we find he invited any error by accepting the trial court's written response. But even after considering the merits of Birch's argument, we find no error because the response accurately stated the law in answering the jury's question.

As Birch notes, this court reviews a trial court's response to a mid-deliberation jury question for an abuse of discretion. *State v. Gonzalez*, 307 Kan. 575, 593, 412 P.3d 968 (2018) (quoting *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 [2014]). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

Yet Birch omitted additional clarifications on this standard of review that seem appropriate based on his challenge. When it becomes necessary for this court to determine whether a trial court's response was a correct statement of law, that presents a legal question subject to unlimited review. *Lewis*, 299 Kan. at 856. In contrast, when considering whether the trial court erred giving one of multiple legally appropriate responses, the appellate court gives the district court deference and determines only whether no reasonable person would have given the response adopted by the district court. 299 Kan. at 856.

Relying on *State v. Stieben*, 292 Kan. 533, 536, 256 P.2d 796 (2011), Birch asserts that the jury was confused about the elements of burglary. In that case, the Kansas Supreme Court said that:

> "Where the jury is 'obviously confused' on a point of *law*, the court has an obligation to provide further instruction, even if the original jury instruction would normally have been sufficient. The failure of the trial court to give the jury additional information was clearly prejudicial and denied the defendant a fair trial."

But given the jury's question, a reasonable person could find that the jury simply wanted to know the classification of certain crimes falling between attempted aggravated burglary and attempted criminal trespass. Presumably, the jury was unsure whether they could convict Birch of a felony interference if they believed the officers' testimony only

20

showed they were investigating some other form of burglary. The trial court's response then directed the jury's attention back to the offenses described in Instruction No. 9, before informing them that aggravated burglary and burglary are both felonies and that "'breaking and entering'" is not a statutorily defined crime. This was a reasonable and accurate statement of law because it informed the jury that a felony interference conviction would still be the proper verdict even if the officers' testimony only showed they were investigating an attempted burglary.

Moreover, nothing about the jury's question suggested confusion about what the State needed to prove for the interference charge, which according to *Hudson* and *Seabury* was that the officers subjectively believed they were investigating a felony when Birch fled from apprehension. Responding to the jury's question with the recommended PIK instructions for burglary, aggravated burglary, and the attempt version of both offenses would have unnecessarily complicated the answer to the question posed by the jury because the State did not need to prove those offenses occurred beyond a reasonable doubt to secure a conviction for interference. See *Johnson*, 40 Kan. App. 2d at 202-03. And as discussed, even if the jury believed Birch had not committed any type of burglary or attempt, there was still sufficient evidence supporting an interference conviction based on Birch's extended flight from arrest for battery of a law enforcement officer.

In sum, Birch has failed to establish he is entitled to have his felony interference with law enforcement conviction overturned.

*The State presented sufficient evidence for a jury to find that Birch committed the crime of battery against a law enforcement officer.*

Birch also argues his battery against a law enforcement officer conviction—for knowingly or recklessly causing bodily harm to Page—must be reversed because the evidence could not support a finding of guilt on the alternative means of committing the

21

offense. He concedes the evidence supported a *knowing* battery against a law enforcement officer but not a *reckless* battery against a law enforcement officer.

The State asserts that proving Birch committed the offense "knowingly," necessarily established "reckless" conduct because knowingly is a higher culpable mental state. In the alternative, the State argues that there was sufficient evidence presented to find Birch guilty of a reckless battery because the officers' testimony established that Birch fought and struggled to get away from them, thus making enough contact to establish the offense.

Birch correctly notes that the Kansas Supreme Court has addressed the merits of an alternative means issue even though it was being raised for the first time on appeal "because it implicates sufficiency of the evidence." *State v. Wells*, 297 Kan. 741, 756-57, 305 P.3d 568 (2013) (citing *State v. Cheffen*, 297 Kan. 689, 699, 303 P.3d 1261 [2013]), *superseded on other grounds by statute as stated in State v. De La Torre*, 300 Kan. 591, 601-02, 331 P.3d 815 (2014). But the threshold question for this court is whether the relevant statute presents alternative means of committing battery against a law enforcement officer. See *State v. Butler*, 307 Kan. 831, 841, 416 P.3d 116 (2018) ("[W]e must initially consider whether the jury was ever presented with an alternative means case."); see also *State v. Hankins*, 304 Kan. 226, 232, 372 P.3d 1124 (2016) (parties not allowed to stipulate to legal conclusions from admitted facts). The distinction matters because if a crime presents alternative means, "'[u]nanimity is not required . . . as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.'" *State v. Brown*, 295 Kan. 181, 188, 284 P.3d 977 (2012). Whether a crime presents alternative means involves statutory interpretation, which presents a question of law subject to unlimited review. *Butler*, 307 Kan. at 841.

*Battery against a law enforcement officer creates two alternative means because the crime can be committed either knowingly or recklessly.*

"A statute states alternative means of committing a crime when it lists 'distinct alternatives for a material element of the crime,' but not when it 'merely describe[s] a material element or a factual circumstance that would prove the crime.'" *State v. Davis*, 312 Kan. 259, 264, 474 P.3d 722 (2020) (quoting *Brown*, 295 Kan. at 184). The Kansas Supreme Court has said the "touchstone" of determining whether a statute creates alternative means of committing an offense is the Legislature's intent. *Brown*, 295 Kan. at 193. "Alternative means are legislatively determined, distinct, material elements of a crime, as opposed to legislative descriptions of the material elements or of the factual circumstances that would prove the crime." *State v. Foster*, 298 Kan. 348, Syl. ¶ 4, 312 P.3d 364 (2013).

As Birch notes, the Kansas Supreme Court has held that the definition of a crime with two distinct mental states presents an alternative means issue. *State v. Ultreras*, 296 Kan. 828, 849-50, 295 P.3d 1020 (2013) (determining that previous version of aggravated battery statute had "at least" five alternative means based partially on different mental states) (citing *State v. O'Rear*, 293 Kan. 892, 896, 270 P.3d 1127 [2012]); see also *State v. Williams*, 303 Kan. 750, 761, 368 P.3d 1065 (2016) (criminal threat statute creates alternative means by using different mental state requirements across subsections). Likewise, the structure of K.S.A. 2018 Supp. 21-5413 suggests battery against a law enforcement officer also presents an alternative means crime.

The State charged Birch under K.S.A. 2018 Supp. 21-5413(c)(2)(B), which provides that "[b]attery against a law enforcement officer is . . . battery, as defined in subsection (a)(1), committed against a:  . . . uniformed or properly identified state, county or city law enforcement officer . . . while such officer is engaged in the performance of such officer's duty." Battery is defined as "[*k*]*nowingly or recklessly* causing bodily harm

23

to another person." (Emphasis added.) K.S.A. 2018 Supp. 21-5413(a)(1). This language plainly presents two distinct culpable mental states by which a battery can be committed and does not merely "describe" a material element. As a result, to be entitled to relief, Birch must show that one or both alternative means was not supported by sufficient evidence.

*Birch concedes that there was sufficient evidence supporting a knowing battery, which is a higher culpable mental state than reckless battery.*

Culpable mental states in Kansas "are classified according to relative degrees, from highest to lowest, as follows:  (1) Intentionally; (2) knowingly; (3) recklessly." K.S.A. 2018 Supp. 21-5202(b). As the State notes, Kansas law also provides that "knowingly" is a higher culpable mental state than "recklessly." K.S.A. 2018 Supp. 21-5202(c) ("If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally."). Because Birch does not dispute that the State presented sufficient evidence to support a knowing battery, we will move on to whether it also presented sufficient evidence of reckless conduct.

*There was sufficient evidence to support a finding of reckless battery.*

Kansas law provides that "[a] person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2018 Supp. 21-5202(j). We find that Birch has failed to establish that the evidence is lacking in support of a reckless battery in this case.

Birch notes that Page's testimony shows Birch punched and kicked him deliberately in resistance of Page's efforts to apprehend him. But even if Birch's actions

24

were deliberate, this testimony also shows that his primary goal was to evade capture. A rational person could conclude based on this evidence that kicking and punching an officer while trying to escape an arrest constitutes a conscious disregard that doing so would cause bodily harm to the officer and amount to a gross deviation from the standard of care a reasonable person would exercise in the situation. As a result, we find that there was sufficient evidence to support the alternative means of reckless battery against a law enforcement officer.

Affirmed.