NOT DESIGNATED FOR PUBLICATION

No. 125,859

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

PRESTON GACHELIN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument. Opinion filed March 22, 2024. Convictions affirmed in part and reversed in part, sentence vacated in part, and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Preston Gachelin appeals his convictions for criminal use of weapons and felony interference with law enforcement, arguing these convictions lack sufficient evidence. The State concedes that Gachelin's weapons conviction must be reversed. On that count, the parties agree that the statute requires the State to prove a prior misdemeanor conviction, but the evidence showed only court-martial offenses. We agree that this is insufficient and reverse Gachelin's conviction on the weapons offense. We affirm Gachelin's remaining conviction and remand for resentencing.

1

*Factual and Procedural Background*

Preston Gachelin's ex-girlfriend, J.W., made an emergency call to police in September 2020, reporting Gachelin for a domestic disturbance. Several police officers, including Steven Abasolo and Samuel Morrison, responded to the call. Dispatch relayed to officers what J.W. had told them—that Gachelin was making threats outside J.W.'s residence and was armed with a gun. Abasolo thus thought that the incident could be "a potential shooting incident" involving a felony offense. Morrison did not believe that a shooting had already occurred but likewise prepared for "a potential shooting or something of that nature."

When Abasolo arrived at the scene, he saw two men in the residence's front yard. He yelled, "Wichita Police," and other officers on the scene were commanding, "Show me your hands," expecting one of the men to have a gun. One man put his hands up and walked toward Abasolo. The other man, Gachelin, started walking but did not raise his hands. Instead, Gachelin walked toward a car with his hands in his hoodie.

Abasolo saw Gachelin crouch down by the car, which made him think Gachelin was taking a "shooter's position" and using the car as cover. Abasolo pointed his gun at Gachelin and notified dispatch and the other officers on his radio. He then heard something metal hit the ground near Gachelin's feet, saw Gachelin stand up with his hands in the air, and saw him kick a gun underneath the car.

Several officers arrived at the scene at the same time as Morrison. Morrison saw Gachelin in the front yard, "throwing objects around" and using "confrontational body language." Morrison also saw Gachelin walk behind the car but did not see him drop a gun.

Police arrested Gachelin and recovered a handgun from the area where he had kicked it. Another officer, Steven Schmitt, later test-fired the gun and confirmed that it was functioning.

Morrison interviewed Gachelin after his arrest. Gachelin explained that the incident had started over a parentage dispute with J.W. When Morrison asked about the gun recovered at the scene, Gachelin responded that he always carried the gun and that he had bought it in Florida.

The State first charged Gachelin with felony criminal use of weapons under K.S.A. 2020 Supp. 21-6301(a)(18) and misdemeanor disorderly conduct under K.S.A. 2020 Supp. 21-6203(a)(3). Gachelin moved unsuccessfully to dismiss the weapons charge after the preliminary hearing. The State later amended the complaint by adding the charge of felony interference with law enforcement contrary to K.S.A. 2020 Supp. 21-5904(a)(2).

The district court held a preliminary hearing at which Abasolo, Morrison, and Schmitt testified. The State admitted certified documents showing the United States Army had court martialed Gachelin and had found him guilty of several military offenses.

Gachelin eventually waived his right to a jury trial and had a bench trial based on stipulated facts. The district court accepted the parties' motion to incorporate the testimony and exhibits presented at the preliminary hearing, including the court-marital documents.

The stipulated facts noted Gachelin's previous objection to the use of his court-martial papers. Gachelin maintained that the documents did not establish a prior misdemeanor conviction for domestic violence. Although Gachelin admitted that in May 2017, he had pleaded guilty to five "specifications of Article 128 of the Uniform Code of

3

Military Justice" and had been court martialed for those offenses, he disputed that these offenses constituted domestic violence misdemeanors.

After considering the parties' arguments and Gachelin's renewed motion to dismiss the weapons charge, the district court denied Gachelin's motion and found him guilty as charged. The district court sentenced Gachelin to a controlling term of 16 months in prison for his criminal use of a weapon, 30 days in jail for disorderly conduct, and 8 months in prison for interference with law enforcement. The district court ran the sentences concurrent and granted Gachelin probation for 12 months. Gachelin timely appeals.

*Does Sufficient Evidence Support Gachelin's Criminal Use of Weapons Conviction?*

The State charged Gachelin with criminal use of weapons under K.S.A. 2020 Supp. 21-6301(a)(18). This statute requires proof of knowingly "possessing any firearm by a person who, within the preceding five years, has been convicted of a misdemeanor for a domestic violence offense, or a misdemeanor under a law of another jurisdiction which is substantially the same as such misdemeanor offense." K.S.A. 2020 Supp. 21-6301(a)(18); see also K.S.A. 2020 Supp. 21-6301(m)(1) (defining "domestic violence" as "the use or attempted use of physical force, or the threatened use of a deadly weapon, committed against a person with whom the offender is involved or has been involved in a dating relationship or is a family or household member").

Gachelin correctly states that to prove criminal use of weapons under the statute, the State had to show he: (1) knowingly; (2) possessed a firearm; and (3) received a misdemeanor conviction for a domestic violence offense within the preceding five years. Gachelin challenges only the third element, claiming his prior court-martial offenses cannot be considered prior misdemeanor convictions under the statute. The State agrees.

4

*Standard of Review*

When the sufficiency of the evidence is challenged in a case decided on stipulated facts, as here, this court is in as good a position as the district court to examine and consider the evidence and to determine what the facts establish as a matter of law. So our appellate review is unlimited. See *State v. Scheuerman*, 314 Kan. 583, 587, 502 P.3d 502 (2022). Statutory interpretation also presents a question of law over which we have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). But we view the facts "in the light most favorable to the State when testing their sufficiency." *State v. Darrow*, 304 Kan. 710, 715, 374 P.3d 673 (2016). And when reviewing the parties' stipulations, we cannot ignore the circumstantial evidence presented by the stipulations and the inferences fairly deducible from them. 304 Kan. at 716.

*Analysis*

Defendants are generally bound to their stipulated facts, and both trial and appellate courts must render judgment based on those facts. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 269, 202 P.3d 7 (2009). But see *State v. Braun*, 312 Kan. 3, 8, 470 P.3d 1286 (2020) (parties may limit stipulated facts for certain uses); *State v. Weber*, 297 Kan. 805, 814, 304 P.3d 1262 (2013) (although defendant may stipulate to fact of prior conviction, court is not bound as to legal effect of prior conviction); *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 400, 266 P.3d 516 (2011). But this rule does not affect our review here because Gachelin properly disputed the facts relevant to his argument on appeal.

At trial, the State presented evidence of Gachelin's court marital for violating the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, for violating a no-contact order. Gachelin also pleaded guilty to violating 10 U.S.C. § 928, which defines assault as follows:

"(a) Assault.—Any person subject to this chapter who, unlawfully and with force or violence—

(1) attempts to do bodily harm to another person;

(2) offers to do bodily harm to another person; or

(3) does bodily harm to another person;

"is guilty of assault and shall be punished as a court-martial may direct.

"(b) Aggravated assault.—Any person subject to this chapter—

(1) who, with the intent to do bodily harm, offers to do bodily harm with a dangerous weapon;

(2) who, in committing an assault, inflicts substantial bodily harm or grievous bodily harm on another person; or

(3) who commits an assault by strangulation or suffocation;

"is guilty of aggravated assault and shall be punished as a court-martial may direct.

"(c) Assault with intent to commit specified offenses.—

(1) In general.—Any person subject to this chapter who commits assault with intent to commit an offense specified in paragraph (2) shall be punished as a court-martial may direct.

(2) Offenses specified.—The offenses referred to in paragraph (1) are murder, voluntary manslaughter, rape, sexual assault, rape of a child, sexual assault of a child, robbery, arson, burglary, and kidnapping."

Gachelin stipulated that he had pleaded guilty to five offenses under these sections of the UCMJ, but he disputed that he had been convicted of a misdemeanor for a domestic violence offense as required by K.S.A. 2020 Supp. 21-6301(a)(18).

The State presented detailed evidence showing the facts underlying Gachelin's military offenses. That evidence showed that Gachelin had committed violent acts against a woman he had dated while stationed in Hawaii. The military had court martialed

Gachelin for violating a no-contact order with that woman, for committing several physically violent acts against her, and for trying to dissuade her from testifying against him. Thus the State argued that Gachelin's court-martial offenses were factually similar to general domestic violence crimes under Kansas law. Yet it did not argue that the provisions of the UCMJ Gachelin violated were substantially the same as K.S.A. 2020 Supp. 21-6301(a)(18) or any other applicable statute.

*Insufficient evidence supports Gachelin's conviction.*

As the parties correctly explain, K.S.A. 2020 Supp. 21-6301(a)(18) requires proof of one or more previous misdemeanor convictions for a domestic violence offense. The conviction must be under Kansas law or the law of another jurisdiction that is substantially the same as the Kansas statute. K.S.A. 2020 Supp. 21-6301(a)(18). Although the statute allows courts to consider out-of-state convictions, the statute does not refer to court martials. When reviewing missing language or statutory gaps like the one presented here, our appellate courts consistently hold that we cannot read such language into the statute. See *State v. Baumgarner*, 59 Kan. App. 2d 330, 336, 481 P.3d 170 (2021) (rejecting State's invitation to read "adjudicate" into K.S.A. 2019 Supp. 21-6301[a][13]).

The often-repeated rules of statutory construction state that the intent of the Legislature governs if that intent can be determined. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language and should avoid reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). And we strictly construe criminal statutes in favor of the accused. *State v. Griffin*, 312 Kan. 716, 720, 479 P.3d 937 (2021).

Our Supreme Court applied this strict construction in *State v. Paxton*, 201 Kan. 353, 365, 440 P.2d 650 (1968), holding that a prior conviction by court martial could not be used to impose an enhanced sentence under the former habitual criminal statute, K.S.A. 21-107a. The rationale for this holding focused on the difference between military offenses and civil law and on the requirement that courts enforce statutes as they are plainly written:

> "Our statute applies when there are former felony convictions committed 'in or out of this state.' . . . Courts-martial convictions frequently relate to offenses of a strictly military character which have no counterpart in the civil law, such as desertion, willful disobedience of a lawful order of a superior officer, and misbehavior before the enemy. We cannot imagine the legislature contemplated that K.S.A. 21-107a was to be applied to a person previously convicted of an offense peculiar only to the military establishment. On the other hand, were we to say that only those military convictions were to be recognized which would be felonies as defined by the Kansas law, we would, in effect, be adding a requirement to the statute that any foreign conviction be a felony under our law. This we cannot do." *Paxton*, 201 Kan. at 365.

See also *State v. Wimberly*, 246 Kan. 200, 212, 787 P.2d 729 (1990) (applying *Paxton* to amended version of habitual criminal statute and noting Legislature's failure to amend statute to avoid *Paxton*'s application); *State v. Floyd*, 218 Kan. 764, 767-68, 544 P.2d 1380 (1976) (applying *Paxton*'s strict construction analysis in rejecting claim that prior conviction under municipal code could be used to enhance state conviction for possession of marijuana from class A misdemeanor to class D felony). Our Supreme Court precedent thus suggests that unless a statute specifically so provides, court-martial offenses cannot be used as an element of a crime to prove a conviction. See generally *Baumgarner*, 59 Kan. App. 2d at 336 (reflecting general approach that courts avoid reading words into statute which are not there).

And as the parties note, in other contexts, our Legislature has specifically addressed court martials, stating they should be considered out-of-state convictions or adjudications. See K.S.A. 21-6811(e)(4) (including military courts in outlining the determination of an offender's criminal history classification in the presumptive sentencing guidelines grids); see also K.S.A. 65-2836 listing instances license in healing arts may be revoked, including where "licensee has been convicted in a special or general court-martial"); K.S.A. 74-5605 (defining qualification of applicant for law enforcement certification and specifying that "conviction" includes "rendering of judgment by a military court martial pursuant to the uniform code of military justice"). So the Legislature knows how to use such language when it desires, yet it chose not to do so in K.S.A. 2020 Supp. 21-6301(a)(18) or related provisions.

Lastly, the State did not show that "the law of another jurisdiction"—the UCMJ—is "substantially the same" as the Kansas statute. K.S.A. 2020 Supp. 21-6301(a)(18). Although some comparisons were made between the facts underlying Gachelin's court marshals and generic facts in domestic violence cases, the necessary comparison was not made between the elements of UCMJ's assault law and the elements of Kansas' domestic violence law, as K.S.A. 2020 Supp. 21-6301(a)(18) requires.

For these reasons, we agree with the parties that the district court erred by finding that Gachelin's court martials showed his prior conviction of a misdemeanor for a domestic violence offense, or a misdemeanor under a law of another jurisdiction which is substantially the same as such misdemeanor offense. K.S.A. 2020 Supp. 21-6301(a)(18). We thus reverse Gachelin's conviction under K.S.A. 2020 Supp. 21-6301(a)(18) for criminal use of weapons.

We find it unnecessary to address Gachelin's two other arguments: that his military offenses are *not* "substantially the same" as any domestic violence offense in Kansas, and that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.

9

Ct. 2348, 147 L. Ed. 2d 435 (2000), by engaging in fact-finding about his court martials. Having decided that reversal is required, we have no basis for deciding either of these questions. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012) (appellate courts do not decide moot questions or render advisory opinions).

*Remand is required.*

The district court designated Gachelin's criminal use of weapons conviction as the primary count at sentencing. Because we are reversing that conviction, resentencing is required. See K.S.A. 21-6819(b)(5) ("In the event a conviction designated as the primary crime in a multiple conviction case is reversed on appeal, the appellate court shall remand the multiple conviction case for resentencing."); see also *State v. Guder*, 293 Kan. 763, Syl. ¶ 3, 267 P.3d 751 (2012) ("The Kansas Sentencing Guidelines Act does not grant district courts the authority to modify sentences following remand unless the primary conviction was reversed on appeal."). It is also likely that the district court will need to conduct a new presentence investigation before resentencing. See *State v. Patry*, 266 Kan. 108, 111, 967 P.2d 737 (1998) (finding criminal convictions in separate case after sentencing should be used in determining criminal history under Act when resentencing, when interpreting precursor to K.S.A. 21-6810[a]).

We thus reverse Gachelin's conviction for criminal use of weapons, vacate his sentence, and remand with directions for resentencing.

*Does Sufficient Evidence Support Gachelin's Interference with Law Enforcement Conviction?*

Gachelin's second argument is that insufficient facts support his conviction for felony interference with a law enforcement officer. That charge was because Gachelin had thrown his gun under a car after officers had demanded that he raise his hands in the

air. We review the entire record in a light most favorable to the State and ask whether we are convinced a rational fact-finder could have found Gachelin guilty of felony interference with law enforcement beyond a reasonable doubt. We do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Brown*, 305 Kan. 674, 689, 387 P.3d 835 (2017).

Interference with law enforcement includes "concealing, destroying or materially altering evidence with the intent to prevent or hinder the apprehension or prosecution of any person." K.S.A. 2020 Supp. 21-5904(a)(2). See also PIK Crim. 4th 59.021 (2018 Supp.). If the interference occurs under subsection (a)(2) within the context of a felony investigation, then the interference is a severity level 8, nonperson felony. K.S.A. 2020 Supp. 21-5904(b)(4)(B). Gachelin contends that the State failed to prove that his interference should be classified as a felony.

Whether an interference charge is classified as a felony or misdemeanor depends on whether the officer who is being interfered with believes they are carrying out an official duty related to a felony or to a misdemeanor. *State v. Hudson*, 261 Kan. 535, 538-39, 931 P.2d 679 (1997); *State v. Gray*, 51 Kan. App. 2d 1085, 1098, 360 P.3d 472 (2015), *rev'd on other grounds by State v. Gray*, 306 Kan. 1287, 403 P.3d 1220 (2017); *State v. Lundquist*, 30 Kan. App. 2d 1148, 1154, 55 P.3d 928 (2002). When felony charges have been filed or a felony was committed, that is enough to charge a defendant with felony interference. *State v. Seabury*, 267 Kan. 431, 437, 985 P.2d 1162 (1999). That requirement is met here, as the State charged Gachelin with felony criminal use of weapons under K.S.A. 2020 Supp. 21-6301(a)(18), and the court later found Gachelin guilty as charged.

And a defendant may properly be convicted of felony interference with law enforcement even though he is not convicted of an underlying felony. See *State v. Birch*, No. 121,771, 2021 WL 300785, at *6 (Kan. App. 2021) (unpublished opinion). The

"touchstone for the classification of the offense is the reason for the officer's approaching the defendant," i.e., whether the officer believed the approach was for a felony or misdemeanor. *Hudson*, 261 Kan. at 538-39. It is "what the officer believes at the time of pursuing a suspect determines if obstruction of official duty will be charged as a misdemeanor or felony." *Lundquist*, 30 Kan. App. 2d at 1154.

Gachelin does not dispute this law but claims that nothing in the stipulated facts or other evidence shows the responding officers reasonably believed that they were investigating a felony. He points out that J.W. did not tell police that Gachelin had threatened her with a gun or that she had seen a gun. She instead stated only that Gachelin generally carried a gun and thus probably had one with him. Gachelin claims that the officers, through dispatch, knew that he had a gun but did not know if he had it illegally. No one alleged that he had brandished the gun, and no officer heard him make any threats—at worst, they saw him angrily toss a tricycle. And no officer testified at trial that he thought he was investigating a felony.

But Gachelin ignores the stipulated facts and Abasolo's testimony at the preliminary hearing. Abasolo testified at the preliminary hearing that he believed he was investigating a felony, and the transcript of that hearing was admitted at trial based on the parties' motion to do so. Gachelin tacitly suggests that Abasolo's testimony lacked credibility, but that argument requires us to reweigh the evidence or to make credibility determinations. That we cannot do. *Brown*, 305 Kan. at 689.

The record also refutes Gachelin's overall claim. The district court considered a variety of evidence when considering Gachelin's guilt, including body camera videos of the incident. The parties' stipulated facts included these statements from investigating officers:

12

- Morrison and Abasolo saw Gachelin "angrily toss a tricycle" in the front yard of J.W.'s home;

- Morrison and Abasolo orally commanded Gachelin to show his hands but Gachelin "concealed his hands in the pockets of his hoodie and walked away from the officers";

- Morrison and Abasolo continued to give verbal commands to Gachelin to stop walking and show his hands after he first refused;

- Gachelin moved behind a car that was parked on the street and crouched behind it;

- While Gachelin was crouched behind the car, Officer Abasolo heard a heavy metal object hit the ground;

- Abasolo saw the defendant stand up and kick an object that Abasolo recognized as a gun further under the car, which "slid to the front of the back passenger tire";

- Abasolo relayed this information to other officers at the scene;

- Morrison heard Abasolo's statement about the gun;

- Gachelin then complied with officers' demands to get on his knees and officers arrested him;

- Morrison read Gachelin his *Miranda* rights after arresting and before interviewing him;

- Morrison asked Gachelin how J.W. knew that he had a gun;

- Gachelin replied that J.W. knew he always carried a gun, which he had bought in Florida;

- Gachelin admitted he had thrown the gun;

- J.W. reported to police that she had told Gachelin to keep their child and to stay away from her house, but Gachelin's responses to her revealed that he planned to show up to fight or shoot her current boyfriend, J.K.;

- Gachelin did not tell J.W. that he had a gun but J.W. knew that Gachelin usually carried one;

- J.W. did not see Gachelin outside of her house on the date of this incident;

13

- J.K. told police that he had heard Gachelin tell J.W. over the phone that he was going to "get this [n*****] if he is there" and to send him outside to "get dealt with;" and
- J.K. felt threatened by Gachelin's statements and believed Gachelin planned to shoot him, so he did not go outside or look outside for Gachelin.

The evidence shows that Gachelin made threatening, fear-inducing statements about J.K. to J.W. Gachelin told her that he was going to "get" J.K. and to send J.K. outside to "get dealt with." J.W. told police that she was afraid that Gachelin planned to hurt or shoot her boyfriend. And the officers knew that Gachelin had made threats and was outside J.W.'s residence and was carrying a gun. The officers testified that based on the information relayed to them when dispatched, they were prepared to encounter a potential shooting incident. Abasolo testified that he believed he was investigating a felony. He explained that he knew Gachelin had threatened J.W. and that he had a gun. Abasolo also testified that he kept his gun pointed at Gachelin throughout most of the encounter and yelled commands to help effectuate an arrest.

The State correctly emphasizes that several felonies in Kansas involve threats and firearms. See, e.g., K.S.A. 21-5412(b) (aggravated assault); K.S.A. 21-5413(b) (aggravated battery); K.S.A. 21-5415 (criminal threat); K.S.A. 21-6308 (criminal discharge of a firearm). Abasolo thus believed he was investigating a felony under the circumstances, and the facts show that other officers may have held similar beliefs. The record thus shows sufficient evidence supporting Gachelin's felony interference with law enforcement conviction.

14

*Conclusion*

We reverse Gachelin's conviction for criminal use of weapons. We affirm Gachelin's conviction for felony interference with law enforcement and remand the case for resentencing.

Convictions affirmed in part and reversed in part, sentence vacated in part, and case remanded with directions.